JANDA v CITY OF DETROIT

Docket No. 95581. Submitted November 7, 1988, at Detroit. Decided
    February 22, 1989. Leave to appeal applied for.

Wayne Janda brought an action in the Wayne Circuit Court
    against the City of Detroit and two of its police officers alleging
    assault and battery and deprivation of his constitutional rights.
    The court, William Leo Cahalan, J., granted judgment on a
    jury verdict for plaintiff. Defendants appealed.

The Court of Appeals *held:*

1. Defendants failed to object to the jury instructions at trial
    and, thus, appellate review is precluded.

2. The issue of the existence of state-law remedies precluding
    a federal civil rights claim was not preserved for appeal.

3. The award of exemplary damages was not improper.

4. The court did not abuse its discretion in refusing to grant
    a new trial or remittitur after defendants claimed that the jury
    award of compensatory damages was excessive, unfair and
    based on improper considerations.

5. Punitive damages may be awarded where the defendant
    willfully and intentionally violates or acts with reckless or
    callous indifference to the federally protected rights of others
    even where they would not normally be recoverable under the
    local law in the state where the violation occurred.

6. The jury's award of punitive damages was not improper or
    so excessive as to require reversal.

7. Any error in the closing argument of plaintiff's counsel
    was harmless at most.

8. The court did not abuse its discretion in granting statutory
    interest on the award of attorney fees to plaintiff.

Affirmed.

1. Appeal — Jury Instructions — Manifest Injustice.
    Failure to make a timely and specific objection to a trial court's

REFERENCES

Am Jur 2d, Appeal and Error § 623, 819, 939 *et seq.;* Costs §§ 72, 78;
    Damages §§ 731 *et seq.*

Sufficiency of showing of actual damages to support award of
    punitive damages—modern cases. 40 ALR4th 11.

jury instructions precludes appellate review unless manifest injustice would result; manifest injustice results where the defect in instructions is of such magnitude as to constitute plain error, requiring a new trial, or where it pertains to a basic and controlling issue in the case.

2. Damages — Exemplary Damages.

Exemplary damages are compensation for injury to feelings and are properly awardable where the defendant commits a voluntary act which inspires feelings of humiliation, outrage, and indignity; the conduct must be malicious or so wilful and wanton as to demonstrate a reckless disregard of the plaintiff's rights.

3. Appeal — Remittitur.

The Court of Appeals will reverse a trial judge's decision to grant or deny remittitur only if there was an abuse of discretion; remittitur should be granted where the verdict has been secured by improper methods, prejudice or sympathy, or where it is so excessive as to shock the judicial conscience.

4. Civil Rights — Punitive Damages.

Punitive damages may be awarded where the defendant willfully and intentionally violates or acts with reckless or callous indifference to the federally protected rights of others even where they would not normally be recoverable under the local law in the state where the violation occurred (42 USC 1983).

5. Trial — Attorney Fees — Interest — Appeal.

The awarding of attorney fees and the decision that the attorney fees award is subject to augmentation by statutory interest are matters within the trial court's discretion and will be upheld absent an abuse of discretion.

*Turner & Turner, P.C.* (by *Donald A. Turner*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), of Counsel, for plaintiff.

*Cooper, Fink & Zausmer, P.C.* (by *David H. Fink* and *Barbara B. Vacketta*), for defendants.

Before: Cynar, P.J., and Hood and Murphy, JJ.

Per Curiam. This case involves allegations of police brutality. On May 22, 1979, plaintiff filed a

complaint alleging counts of assault and battery and deprivation of his constitutional rights under 42 USC 1983 against defendants City of Detroit and two Detroit police officers. On June 8, 1983, the jury rendered a verdict in favor of plaintiff and awarded plaintiff compensatory, exemplary and punitive damages in the amount of $1,350,000. Defendants appeal as of right. We affirm.

The incident that gave rise to plaintiff's complaint occurred on December 18, 1978, at Steve and Al's Bar in Detroit, Michigan. At about 3:00 P.M., plaintiff and his brother, Gerald Janda, arrived at the bar. Steve and Al's Bar had been owned jointly by plaintiff's father, Al Janda, and his partner, Steve Andrezejski, for thirty years. Plaintiff's reasons for being at the bar were to play pool with his brother and to speak with Andrezejski about his father's working schedule.

Plaintiff testified that he and his brother played pool and drank two beers each. After they had been at the bar for about an hour and a half, plaintiff mentioned to Andrezejski that he thought it was unfair that his father always had to work the more difficult evening shift. Andrezejski took offense to plaintiff's comments and some words were exchanged. Plaintiff then saw Andrezejski put a gun under his apron.

Plaintiff then called the police and told them that there was a man in the bar with a gun. Unbeknownst to plaintiff, Andrezejski had also called the police. At about the same time, at approximately 4:45 P.M., plaintiff's father arrived to work the evening shift. Plaintiff's father was unaware of the argument between plaintiff and Andrezejski.

When defendant Detroit Police Officers Kenneth Lundholm and Emanuel Vetor arrived at the bar, Vetor went to talk with Andrezejski while Lun-

dholm remained at the door. In violation of police department regulations requiring officers to wear a hat with their police badge number visible, defendants had their hats off and their badges concealed by their coats. After plaintiff saw Vetor talking with Andrezejski, he went over to Lundholm and told him that Andrezejski had been carrying a gun. Plaintiff then asked Lundholm for his badge number and Lundholm replied "shut up, punk." Vetor came over and the two policemen pushed plaintiff outside the bar and onto the sidewalk. When plaintiff turned around to ask Lundholm why he was being pushed out of the bar, Lundholm struck him on the head with a flashlight or a blackjack.

Upon being struck, plaintiff's body went limp. As he fell to the ground, both officers kicked and punched plaintiff. Plaintiff was then pinned face down to the ground, handcuffed, and picked up by his hands and placed in the police car. During the course of the beating, plaintiff defecated in his pants.

Plaintiff was then taken to Detroit General Hospital where part of his head was shaven and he was given eight to nine stitches. While plaintiff was at the hospital, he was handcuffed by his leg and arm to a cart and was left in the hospital hallway for about two hours. Plaintiff was also placed in a hospital holding cell for an hour and was not allowed to use the bathroom or change his clothes. Although he had a terrible headache, plaintiff was given no medication.

Plaintiff was then transferred to the Davison precinct where he was placed in a cell with two hundred other prisoners. After about an hour, he was taken to police headquarters where he remained until the following day.

On May 22, 1979, plaintiff filed a complaint

alleging counts of negligence, gross negligence, assault and battery and a 42 USC 1983 claim against defendants. Subsequently, the City of Detroit was dismissed as a defendant from the § 1983 claim.

At trial, Officer Lundholm denied saying "shut up, punk" but admitted that he violated police regulations by not wearing his hat. Lundholm's version of the incident was that plaintiff asked him for his badge number and then grabbed his lapel and started yelling at him. Lundholm claimed that, when he pushed plaintiff's hand away, plaintiff grabbed his throat. Lundholm pushed plaintiff away and hit him. Plaintiff then pushed Lundholm and Vetor out of the door. Lundholm indicated that plaintiff fell to the ground and cut his head. Lundholm claimed that the fight continued in the street and plaintiff was ultimately handcuffed and arrested. Lundholm denied striking plaintiff with a weapon.

Lundholm was then asked if he had ever been suspended without pay for making a false oral or written statement or neglecting his duties. Lundholm responded "no." Lundholm was then asked to read a document which indicated that on or about February 16, 1976, Lundholm was suspended for ten working days without pay for willfully making a false oral or written statement or report and for neglecting his duties. Lundholm then admitted that he had been suspended. Officer Vetor then testified and gave Lundholm's version of the incident.

Steve Andrezejski testified that he put a gun in his pocket after he and plaintiff started arguing. He claimed that plaintiff threatened to get him and would wait for him at the end of his shift. Andrezejski did not know how much plaintiff drank that day but believed that plaintiff was a

little "juiced up." Andrezejski further testified that he did not see any punches thrown in the bar and that he did not see plaintiff grab Lundholm's lapel. Andrezejski did see the officers drag plaintiff out of the door of the bar.

Plaintiff's father, Al Janda, testified that his sons did not seem intoxicated and that he did not witness any scuffle, punches or yelling in the bar.

Plaintiff's brother, Gerald Janda, testified that Officer Lundholm said "shut up punk" and that there were no punches thrown or yelling in the bar. After plaintiff was beaten outside of the bar, Gerald Janda saw plaintiff lying on the sidewalk in a pool of blood. The following day, when Gerald Janda went to pick up plaintiff from the police station, plaintiff had a bruise under his eye, blood on his person and was generally a "mess."

Dr. James Gotham, M.D., testified that he performed a neurological examination of plaintiff on February 27, 1979. Dr. Gotham diagnosed plaintiff as suffering from scalp lacerations and a concussion. Gotham testified that plaintiff had post-traumatic headaches from being struck with a blackjack and that plaintiff required eight to nine stitches.

Dr. Ronald Mako, M.D., performed a psychiatric evaluation of plaintiff on August 15, 1981. According to Dr. Mako, plaintiff suffered from headaches, emotional reactions upon seeing an individual in a police uniform, nightmares, fear of crowds, a tendency to withdraw from people, aversion to social gatherings, paranoia, depression, and an inability to continue with his college education. Mako believed that plaintiff had symptoms of traumatic neurosis that were clearly related to the subject incident. He explained that the severity of the symptoms is a result of the surprise nature of the incident.

Dr. Robert Bozell, M.D., the intern who stitched plaintiff's head after the incident, testified that it would be hard to receive the type of cut that plaintiff sustained from hitting flat pavement.

On June 8, 1983, the jury found that both Lundholm and Vetor had committed assault and battery on plaintiff. The jury awarded compensatory damages of $200,000 against Lundholm and Vetor on the assault and battery count. The jury also awarded $400,000 in exemplary damages against Lundholm and Vetor on the same count. The City of Detroit was found to be vicariously liable for those damages. Additionally, the jury awarded $750,000 in punitive damages against the police officers on the 42 USC 1983 claim. Subsequently, the trial court entered an order denying defendants' motion for a new trial or remittitur.

On appeal, defendants first argue that the trial court erroneously instructed the jury that a finding of liability against the individual officers on the assault and battery count would automatically result in vicarious liability against the City of Detroit. However, defendants did not object to the instruction at trial. Failure to make a timely and specific objection to jury instructions precludes appellate review unless manifest injustice would result. *Joba Construction Co, Inc v Burns & Roe, Inc,* 121 Mich App 615, 639; 329 NW2d 760 (1982). Manifest injustice results where the defect in instruction is of such magnitude as to constitute plain error, requiring a new trial, or where it pertains to a basic and controlling issue in the case. *Id.* We find that, in the absence of manifest injustice in this case, defendants' failure to object to this instruction at trial precludes appellate review of this issue.

Defendants next argue that the trial court erred in instructing the jury that a cause of action for

assault and battery is identical to a cause of action under 42 USC 1983 and that, as a result, the jury was allowed to award damages under § 1983 without a finding of liability. However, defendants also failed to object to this instruction at trial. Nevertheless, after reviewing the record, we find that the trial court's instruction to the jury did not constitute error requiring reversal.

Defendants next argue that the existence of state law remedies precludes any § 1983 claim by plaintiff based on violation of due process. However, this issue is not properly preserved for appeal since defendants did not raise it in the court below. *Muilenberg v The Upjohn Co,* 169 Mich App 636, 644; 426 NW2d 767 (1988).

Defendants next argue that the exemplary damage award should be set aside because recovery of both exemplary and compensatory damages constitutes an impermissible recovery. Defendants maintain that the jury was improperly instructed regarding exemplary damages and that the award of exemplary damages in this matter was impermissibly punitive in nature. However, we first note that defendants failed to object to the jury instruction regarding exemplary damages at trial. Thus, defendants' failure to object precludes appellate review on this issue. *Joba Construction Co, Inc, supra.*

Furthermore, even if defendants had objected to the jury instruction, we find that the exemplary damage award should not be set aside. Exemplary damages are compensable for injury to feelings. *Veselenak v Smith,* 414 Mich 567, 574; 327 NW2d 261 (1982); *Jackson Printing Co, Inc v Mitan,* 169 Mich App 334, 341; 425 NW2d 791 (1988). They are awardable where the defendant commits a voluntary act which inspires feelings of humiliation, outrage, and indignity. *Veselenak, supra;*

*Jackson Printing Co, Inc, supra.* The conduct must be malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights. *Veselenak, supra,* pp 574-575. Under the facts and circumstances of this case, we find that the trial court's jury instruction and the award of exemplary damages were not improper.

Defendants next argue that the jury award of compensatory damages was excessive, unfair and based on improper considerations. We disagree.

It is within the trial court's sound discretion to grant or deny a motion for a new trial. *Beasley v Washington,* 169 Mich App 650, 655; 427 NW2d 177 (1988). Additionally, this Court will reverse a trial court's decision to deny remittitur only if there has been an abuse of discretion. *White v City of Vassar,* 157 Mich App 282, 288; 403 NW2d 124 (1987). Remittitur should be granted when the verdict has been secured by improper methods, prejudice or sympathy or when it is so excessive that it shocks the judicial conscience. *Id.*

Based upon our review of the record in this case, we find that the jury award of compensatory damages was not excessive, unfair, or based upon improper considerations and that the trial court did not abuse its discretion in denying defendants' motion for a new trial or remittitur.

Defendants further argue that the excessiveness of the jury verdict indicates that it was a product of passion and prejudice and necessitates a new trial. We disagree. Under the facts and circumstances of this case, we find that the instant jury verdict was not so excessive that it shocks the judicial conscience of this Court. *White, supra.* Furthermore, the trial court did not abuse its discretion in denying defendants' motion for a new trial.

Defendants next argue that the trial court erred

in allowing the jury to award punitive damages because state law governs the right to punitive damages under 42 USC 1983 and Michigan law precludes an award of punitive damages. However, this issue is not properly preserved for appeal since defendants did not raise it in the court below. *Muilenberg, supra.*

Furthermore, even if this issue was properly preserved, we find no error requiring reversal. The United States Supreme Court has held that punitive damages for deprivation of civil rights may be awarded when the defendant willfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others. *Smith v Wade,* 461 US 30, 56; 103 S Ct 1625; 75 L Ed 2d 632 (1983); *Gordon v Norman,* 788 F2d 1194, 1199-1200 (CA 6, 1986). Damages for deprivation of a federal right are governed by federal standards. *Sullivan v Little Hunting Park, Inc,* 396 US 229, 239-240; 90 S Ct 400; 24 L Ed 2d 386 (1969); *Gordon, supra.* Thus, punitive damages may be awarded under 42 USC 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred. *Gordon, supra.*

Defendants next argue that the award of punitive damages should be vacated because the jury did not individually determine either the liability or the amount of punitive damages to be assessed against each of the defendant officers. However, defendants did not object to the jury instructions regarding the apportionment of damages against the officers. Failure to make a timely and specific objection to the jury instructions precludes appellate review unless manifest injustice would result. *Joba Construction Co, Inc, supra.* Nevertheless, we find that the jury instructions regarding the appor-

tionment of damages against the defendant officers were not improper.

Defendants next argue that this Court should vacate the jury's award of punitive damages because the award is unsupported by the record and is shocking in its magnitude. We disagree. We find that the jury's award of punitive damages was not improper based on the facts in this case. Furthermore, the award of punitive damages was not so excessive that it shocks the judicial conscience of this Court. *White, supra.*

Defendants next argue that the trial court erred in instructing the jury to award punitive damages since the police officers were sued in their official capacity. Defendants further argue that the punitive damage award against the officers is tantamount to an award against the city. Defendants maintain that municipal corporations are immune from punitive damage awards.

However, defendants did not object to the trial court's jury instruction on punitive damages. Thus, defendants' failure to object precludes appellate review. *Joba Construction Co, Inc, supra.* Furthermore, even if defendants had preserved this issue for appeal, we find that defendants' arguments on this issue are without merit.

Defendants next argue that prejudicial remarks made by plaintiff's counsel during the closing arguments denied defendants a fair trial.

In *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 102-103; 330 NW2d 638 (1982), our Supreme Court stated:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the

court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted.

In the present case, we find that defendants' alleged errors on this issue constituted harmless error at most. Furthermore, defendants did not preserve this issue for appeal by making an objection and request for an instruction or a motion for mistrial.

Lastly, defendants argue that the trial court erred in awarding interest on the attorney fees awarded to plaintiff's counsel. We disagree.

The awarding of attorney fees is within the discretion of the trial judge and it will be upheld absent an abuse of discretion. *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982); *Superior Products Co v Merucci Bros, Inc,* 107 Mich App 153, 159; 309 NW2d 188 (1981), lv den 415 Mich 851 (1982).

Additionally, the trial court's decision as to whether an attorney fee award is subject to augmentation by statutory interest is a matter within the trial court's discretion. *City of Warren v Dannis,* 136 Mich App 651, 662-663; 357 NW2d 731 (1984), lv den 422 Mich 932 (1985).

In this case, we find that the trial court did not abuse its discretion in awarding interest on the attorney fees awarded to plaintiff's counsel.

Affirmed.