KERMIZIAN v SUMCAD

Docket No. 118149. Submitted November 21, 1990, at Detroit. Decided
    May 6, 1991, at 9:15 A.M.

   George Kermizian brought a medical malpractice action in the
   Wayne Circuit Court in September 1986 against Bernard T.
   Sumcad, M.D., Bernard T. Sumcad, M.D., P.C., and Oakwood
   Hospital Association, seeking damages for urinary incontinence
   which allegedly was the result of improper prostate surgery
   performed by Dr. Sumcad in October 1977. Sumcad moved for
   summary disposition on the basis that the two-year statutory
   limitation period had expired before commencement of the
   action. There was deposition testimony that the plaintiff had
   been informed by Dr. Sumcad that urinary incontinence was a
   temporary condition which was part of the healing process and
   that plaintiff had not learned that the incontinence was perma-
   nent and the result of improperly performed surgery until May
   or June 1986. The trial court Harry J. Dingeman, Jr., J.,
   granted summary disposition. The plaintiff appealed, arguing
   that his claim was not barred by the statute of limitations
   because he brought the action within six months of the time he
   discovered the claim.

      The Court of Appeals held:

      A dispute concerning the date on which a plaintiff in a
   medical malpractice action discovered or reasonably should
   have discovered the existence of a cause of action is a factual
   determination to be made by a jury where one has been
   demanded. Because the pleadings and depositions raise a ques-
   tion of fact concerning when the plaintiff should have discov-
   ered the existence of his cause of action, the trial court erred in
   granting the motion for summary disposition.

      Reversed and remanded.

*Harold Dunne*, for the plaintiff.

*Siemion, Huckabay, Bodary, Padilla & Morganti,
P.C.* (by *Raymond W. Morganti*), for Sumcad.

Before: Marilyn Kelly, P.J., and Holbrook,
Jr., and Sullivan, JJ.

SULLIVAN, J. The Wayne Circuit Court granted a motion for summary disposition brought by defendants-appellee under MCR 2.116(C)(7) on the ground that plaintiff's medical malpractice claim is barred by the statute of limitations. Plaintiff appeals as of right, arguing that summary disposition was inappropriate because the question of when plaintiff discovered or should have discovered his claim is a question of fact for the jury. We agree.

Defendant Dr. Sumcad performed a transurethral resection of plaintiff's prostate gland in October 1977. Nine years later, on September 25, 1986, plaintiff filed a complaint against Dr. Sumcad, alleging that the doctor committed medical malpractice in performing the surgery. It is undisputed that plaintiff did not file his complaint within the applicable two-year period of limitation contained in MCL 600.5805(4); MSA 27A.5805(4). Instead, the dispute is over whether plaintiff filed the instant action within six months after he discovered or should have discovered his claim. MCL 600.5838(2); MSA 27A.5838(2).

Since the adoption of the Michigan Court Rules in 1985, panels of this Court have disagreed over whether factual disputes regarding when discovery occurred or should have occurred should be decided by the judge as a preliminary question or by the jury. *Moss v Pacquing,* 183 Mich App 574, 579; 455 NW2d 339 (1990). The majority in *Blana v Spezia,* 155 Mich App 348; 399 NW2d 511 (1986), held that such disputes should be decided by the judge as a preliminary question. The majority was concerned that a jury might not be able to fairly decide when a plaintiff discovered or should have discovered a claim because of its desire to award the plaintiff damages. *Id.,* p 353. The majority further relied on MCR 2.116(G)(5) which, contrary

to GCR 1963, 116.3, requires a trial court to consider affidavits and other evidence in deciding a motion for summary disposition based on the statute of limitations. Such a change in the court rules, the majority explained, "may indicate a broader role for the trial judge in deciding factual issues concerning the application of the statute of limitations." *Id.,* p 354.

Subsequent panels have declined to follow *Blana,* as do we. We adopt as our own reasoning Judge MURPHY's reasoning in *Moss, supra.* Judge MURPHY began by quoting MCR 2.116(I)(3), which provides in pertinent part:

> A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court . . . . If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial *as to issues raised by the motion as to which there is a right to trial by jury.* [Emphasis added.]

Judge MURPHY went on to explain:

> At the time our Supreme Court adopted this court rule, there existed a long line of cases which held that, where there is a dispute concerning the date when a plaintiff discovered, or reasonably should have discovered, his cause of action, this factual determination is to be made by a jury. *Winfrey v Farhat,* 382 Mich 380, 387; 170 NW2d 34 (1969); *Wallisch v Fosnaugh,* 126 Mich App 418, 424-425; 336 NW2d 923 (1983), lv den 418 Mich 871 (1983); *Leyson [v Krause,* 92 Mich App 759] 764-765 [285 NW2d 451 (1979)]; *Leary v Rupp,* 89 Mich App 145; 280 NW2d 466 (1979); *Kelleher v Mills,* 70 Mich App 360; 245 NW2d 749 (1976). Accordingly, we can only conclude that the issue

of discovery is an issue to which a right to jury trial exists unless the facts are undisputed and the trial court can properly conclude that the plaintiff's claim is barred as a matter of law. This interpretation is consistent with the notes following the court rule:

"Subrule (I) includes the provisions regarding disposition of the motion found in GCR 1963, 116.3 and 117.3. In addition, under subrule (I)(2), an immediate trial of disputed factual issues raised by a motion under subrule (C)(7) may be held despite the fact that a jury has been demanded. *The immediate trial would, however, be by jury.*" [Emphasis added.]

We disagree with the assertion in *Blana, supra,* p 354, that the language of MCR 2.116(G)(5) serves as support for the conclusion that the discovery issue is to be decided by the trial court after an evidentiary hearing. MCR 2.116(G)(5) provides in part:

"The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10)."

We read this subrule as mandating no more than the trial judge take advantage of as broad a base of evidentiary material as possible before determining whether a material factual dispute exists. We find nothing in this subrule, or in MCR 2.116(I)(3) for that matter, that expressly repudiates the time-honored precepts that where no factual disputes exist, the question becomes one of law appropriate for the trial court to answer, but that where a factual dispute does exist, the question is to be answered by a jury. *Wallisch, supra,* p 424. [*Moss, supra,* pp 580-581.]

Also see *Coleman v Dowd,* 185 Mich App 662, 665-666; 462 NW2d 809 (1990), *Wakefield v Hills,* 173 Mich App 215; 433 NW2d 410 (1988), and the dissenting opinion of Judge D. E. HOLBROOK, JR., in *Blana, supra.*

Having decided that summary disposition is inappropriate when a trial court cannot decide as a matter of law when a plaintiff discovered or should have discovered his claim, we now review the record before us in light of the pertinent law. The discovery rule does not require that a plaintiff know with certainty that the defendant committed malpractice before the six-month discovery period begins to run. *Griffith v Brant,* 177 Mich App 583, 588; 442 NW2d 652 (1989). All that is required is that the plaintiff know of the act or omission of the defendant and have reason to believe that the medical treatment was improper or was performed in an improper manner. *Id.,* pp 587-588; *Wakefield, supra,* p 218. Here, a fact question exists regarding when plaintiff had reason to believe that the transurethral resection was performed in an improper manner.

Following the 1977 surgery, plaintiff began experiencing urinary incontinence.[1] The incontinence neither improved nor worsened, but still existed at the time plaintiff filed his complaint nine years later. Although he informed defendant Dr. Sumcad of the incontinence, plaintiff testified in his deposition that the doctor told him that the incontinence was a part of the normal healing process and that the time it takes to go away varies depending on the individual. At plaintiff's final visit to Dr. Sumcad in February 1980, the doctor prescribed medication for the incontinence.

Plaintiff also saw a Dr. Cerni in October 1978. Dr. Cerni confirmed Dr. Sumcad's information that the incontinence was a part of the normal healing process.

Plaintiff saw his family physician, Dr. Mulero,

---

[1] In the depositions filed below, the term "urinary incontinence" was referred to as "incontinence" or involuntary "leakage" or "dribbling" of urine.

for fairly regular annual physical examinations between 1977 and 1986. In 1977, Dr. Mulero had referred plaintiff to Dr. Sumcad, a urologist, apparently because plaintiff had difficulty urinating. According to plaintiff, he told Dr. Mulero of the incontinence following the surgery, but Dr. Mulero merely responded that Dr. Sumcad is a good doctor.

Plaintiff testified that throughout the years he thought that the incontinence was due to the healing process following the surgery. Not until he saw a Dr. O'Donnell in May or June 1986 did he know that the incontinence was permanent. Dr. O'Donnell told plaintiff that the problem was permanent and something to the effect that excessive material had been removed from the bladder opening during the 1977 surgery. Before seeing Dr. O'Donnell, plaintiff thought the incontinence was part of the normal healing process.

Dr. Mulero, plaintiff's family physician, did not contradict plaintiff's deposition testimony. Over the years, Dr. Mulero noted in his records plaintiff's incontinence problem. Dr. Mulero testified that although plaintiff was aware that the incontinence was attributable to the surgery, plaintiff never complained about the surgery. Dr. Mulero's testimony that plaintiff was aware that the incontinence was related to the surgery is not necessarily inconsistent with plaintiff's expressed belief that the incontinence was a part of the process of healing after surgery. Although Dr. Mulero also testified that he assumed that the incontinence would be permanent, he did not testify that he told defendant this news. Finally, Dr. Mulero did not refer plaintiff to a urologist for the incontinence problem because he believed that, if plaintiff was concerned about it, plaintiff would seek out Dr. Sumcad or another urologist. Dr. Mulero ad-

mitted that because he was not a urologist he was not in a position to opine, presumably to plaintiff, whether the incontinence was caused by improper surgery.

These facts gleaned from the deposition testimony of plaintiff, Dr. Sumcad, and Dr. Mulero raise an issue of fact regarding when plaintiff had reason to know that the surgery was performed in an improper manner. While the incontinence continued for nine years before plaintiff filed his claim, plaintiff testified that he believed that the incontinence was a part of the healing process. According to plaintiff, it was not until May or June 1986 that he was informed that the incontinence was permanent and that excessive material might have been cut away during the surgery. Contrary to the trial court's findings, the deposition testimony does not reflect that Dr. Mulero told plaintiff in 1984 that the problem was permanent or that plaintiff was told that the incontinence could last for up to only one year after the surgery. Under these facts, the question when plaintiff had reason to believe that the surgery was performed in an improper manner could not be decided as a matter of law.

Reversed and remanded. We do not retain jurisdiction.