GORE v RAINS & BLOCK

Docket No. 114744. Submitted October 10, 1990, at Lansing. Decided
   June 17, 1991, at 9:30 A.M.

Mark and Virginia Gore brought a legal malpractice action in the
   Washtenaw Circuit Court against the law firm of Rains &
   Block, and Lowry A. Rains, Norman L. Block and Allan R.
   Gurvitz, attorneys in that firm, alleging that the defendants
   had failed to file a medical malpractice claim on Mark Gore's
   behalf. The defendants admitted that they had breached the
   applicable professional standard of care by failing to file the
   medical malpractice claim, but disputed the merit of that
   medical malpractice claim. Following a trial before Edward D.
   Deake, J., the jury returned a verdict of $60,000 in favor of
   Mark Gore for the underlying medical malpractice claim,
   $60,000 in favor of Mark Gore for mental anguish arising out of the
   legal malpractice claim, and $30,000 in favor of Virginia Gore
   for her loss of consortium claim. The defendants moved for a
   new trial, remittitur, or a judgment notwithstanding the ver-
   dict. The trial court granted the motion for a judgment not-
   withstanding the verdict with respect to Virginia Gore's verdict
   for loss of consortium, but denied the defendants' other mo-
   tions. Virginia Gore appealed, and the defendants and the
   plaintiffs cross appealed.

   The Court of Appeals held:

   The trial court erred in granting the defendants' motion for
   judgment notwithstanding the verdict with respect to plaintiff
   Virginia Gore's claim for loss of consortium. Virginia Gore
   would be entitled to seek damages for loss of consortium if on
   the date of plaintiffs' marriage Mark Gore had not yet discov-
   ered, or in the exercise of reasonable diligence could not have
   discovered, that he had a cause of action for medical malprac-
   tice. A question of fact exists concerning the date of discovery

REFERENCES

Am Jur 2d, Attorneys at Law § 226; Husband and Wife § 447.
Legal malpractice in handling or defending medical malpractice
   claim. 78 ALR4th 725
Recovery for loss of consortium for injury occurring prior to mar-
   riage. 5 ALR4th 300.

of the medical malpractice; accordingly, a retrial of the question of loss of consortium is required. Plaintiff Mark Gore was properly awarded both damages for the physical injury caused by the medical malpractice and damages for mental anguish caused by the legal malpractice.

1. Because reasonable minds could differ concerning whether the plaintiffs, on the date of their marriage, had discovered or should have discovered that Mark Gore had a medical malpractice claim, and because the jury was never asked to determine that issue, the motion for a judgment notwithstanding the verdict should have been denied and retrial of the claim for loss of consortium should have been ordered.

2. While a physical injury is a condition precedent to recovery of damages for emotional distress, there is no such requirement for recovery of damages for mental anguish. Accordingly, the jury properly granted damages both for the physical injury caused by the medical malpractice and for mental anguish caused by the legal malpractice.

3. The defendants were not prejudiced by testimony concerning the proper professional standard of care, despite the fact that the defendants admitted breaching that standard.

4. The defendants' failure to object to the jury instructions precludes review, no manifest injustice having been shown.

5. Any error resulting from the admission of testimony concerning the statements of a doctor who treated Mark Gore, but who was not called as a witness at trial, were cured by the trial court's instructions to the jury.

Affirmed in part, reversed in part, and remanded.

GILLIS, P.J., concurring in part and dissenting in part, stated that the trial court erred in denying the defendants' motion for judgment notwithstanding the verdict with respect to Mark Gore's claim for damages for mental anguish, but properly granted defendants' motion for judgment notwithstanding the verdict with respect to Virginia Gore's claim for loss of consortium. Mark Gore sought damages for emotional distress arising out of the defendants' legal malpractice; however, such a claim can only be brought where there is a physical injury caused by a defendant's negligent conduct. Because Mark Gore did not sustain any bodily injury at the time or as a result of the legal malpractice, there could be no claim for damages for emotional distress arising out of the legal malpractice. Virginia Gore's claim for damages for loss of consortium, to the extent that it is derivative of Mark Gore's claim for emotional distress, also must fail. To the extent that the claim of loss of consortium is based on the medical malpractice claim, plaintiffs' marriage

after they clearly knew of the medical malpractice claim precludes the loss of consortium claim.

1. TORTS — LOSS OF CONSORTIUM — MALPRACTICE — DISCOVERY OF
   MALPRACTICE.
   The spouse of a person bringing a medical malpractice claim is not precluded from bringing a loss of consortium claim, despite having been married after the date the malpractice was committed, if, at the time of the marriage, the injured spouse has not discovered, or in the exercise of due diligence could not have discovered, that there existed a cause of action for medical malpractice.

2. DAMAGES — MALPRACTICE — MEDICAL MALPRACTICE — LEGAL
   MALPRACTICE — MENTAL ANGUISH.
   A plaintiff in an action for legal malpractice based on an attorney's failure to pursue a medical malpractice action on behalf of the plaintiff may recover damages both for the physical injury caused by the medical malpractice and for the mental anguish caused by the legal malpractice.

*Louis Prigioniero* and *Mark D. Shoup,* for the plaintiff.

*Collins, Einhorn & Farrell, P.C.* (by *Michael J. Sullivan* and *Noreen L. Slank*), for the defendants.

Before: GILLIS, P.J., and MICHAEL J. KELLY and NEFF, JJ.

NEFF, J. Plaintiffs, Mark and Virginia Gore, sued the law firm of Rains & Block and certain partners thereof for legal malpractice for failing to file a timely medical malpractice claim on their behalf. Following a jury trial, Mark Gore was awarded $60,000 for the underlying medical malpractice claim and $60,000 for mental anguish arising out of the legal malpractice claim, for a total of $120,000 in damages. Virginia Gore was awarded $30,000. Defendants thereafter moved for a new trial, remittitur, and a judgment notwithstanding the verdict. In part, the motion for the judgment notwithstanding the verdict was related

to Virginia Gore's claim for loss of consortium. The court granted defendants' motion for a judgment notwithstanding the verdict with regard to Virginia Gore, but otherwise denied defendants' motion. Virginia Gore then filed a claim of appeal, challenging the circuit court's order granting defendants' motion for a judgment notwithstanding the verdict. Defendants filed a cross appeal with regard to the judgment entered in favor of Mark Gore and the circuit court's order denying their motion for a new trial, remittitur, or a judgment notwithstanding the verdict.

We affirm the circuit court's denial of defendants' motion for a judgment notwithstanding the verdict with regard to Mark Gore's claims. We reverse the circuit court's order granting defendants' motion for a judgment notwithstanding the verdict with regard to Virginia Gore's loss of consortium claim.

I

On October 11, 1981, Mark Gore went to Thorne Hospital's emergency room, complaining of pain associated with a swollen testicle. While initially a surgeon informed him that his testicle would have to be amputated, no operation occurred, apparently because that doctor ruled out torsion, a twisting of the testicle which would normally require amputation to prevent gangrene. Instead, the doctors who treated Gore at Thorne Hospital determined that he had an infection and proceeded to treat it. After discharge from the hospital, Gore continued to see one of the doctors who had seen him at the hospital. That doctor prescribed different antibiotics and cortisone. While the doctor believed that Gore's condition was improving, he was still concerned about the swelling,

which to him appeared to be slightly decreased. At that time, Mark Gore's testicle was less than double in size.

On November 30, 1981, the sixth time Gore was treated by the doctor, the doctor changed antibiotics again and told him that he could return to work the following week. Gore believed that his condition was not improving and, therefore, did not return to the doctor's office for further treatment even though he had not been discharged from the doctor's care. We note that Mark Gore did not have medical insurance.

Mark Gore was subsequently treated for other ailments and, in fact, hospitalized for a head injury he received in an unrelated automobile accident. He did not mention that his testicle continued to be swollen. He testified that, on the basis of the information provided by the original surgeon who indicated that his testicle "wasn't any good anyway," he believed that he had to live with the swollen testicle.

In April 1983, Mark Gore went to the emergency room of another hospital because he was unable to get out of bed. At that time, the testicle was approximately six times its normal size. Gore was referred to Dr. Chin-Ti Lin, a urologist, who removed his testicle on April 14, 1983, suspecting cancer. Malignant cancer was confirmed, and Gore was scheduled to undergo a second surgery on May 9, 1983. Mark Gore and Virginia Gore married on May 7, 1983. Mark Gore underwent the second surgery to remove his lymph nodes on May 9, 1983.

Sometime after Mark Gore first met with Dr. Lin, it is not clear exactly when, Gore suspected that the doctors at Thorne Hospital had missed diagnosing the cancerous tumor. However, Gore was too worried about himself to consult an attor-

ney. After the second surgery, Gore thought that he should consult an attorney because any money he recovered could be used to support his family in the event that he did not survive. At trial, Virginia Gore confirmed that, shortly after their discussion with Dr. Lin, she and Mark thought that the original doctors had committed malpractice in failing to detect Mark Gore's cancer. Virginia Gore was never questioned on direct examination or cross-examination concerning whether she first suspected medical malpractice before or after her marriage to Mark Gore.

On October 2, 1983, Mark and Virginia Gore met with defendant Block. Plaintiffs claim that thereafter their repeated telephone calls and letters went unanswered by defendants. On June 25, 1985, defendant Gurvitz wrote Mark Gore the following letter:

> My sincere apologies for the delay in responding to your earlier communications however, we have been making a thorough inquiry into the facts of your alledged [sic] complaints. We have not been able to find an expert to make the appropriate causal relationship or support our theories of possible malpractice. Accordingly, we are not going to be proceeding on your claim and will close our file.
>
> If you have any questions or want to discuss the matter further, please feel free to contact us.

Within two weeks, Mark Gore sought the advice of another attorney and on October 1, 1985, filed a legal malpractice suit against defendants. Therein, Mark Gore alleged that defendants failed to file a malpractice suit against doctors who treated him at Thorne Hospital within the applicable statute of limitations. On November 5, 1985, plaintiffs filed an amended complaint, adding Virginia Gore as a plaintiff and claiming that she had suffered a loss

of consortium as the result of the legal malpractice.

Defendants filed a motion for summary disposition of Virginia Gore's loss of consortium claim, alleging that she had married Mark Gore after the removal of his testicle and, therefore, she had no loss of consortium claim. The circuit court denied defendants' motion for summary disposition.

At trial, the defendants conceded liability on the legal malpractice claim for failing to file a medical malpractice action within the statute of limitations; however, defendants claimed that medical malpractice had not occurred. Plaintiffs claimed that medical malpractice did occur. The jury found in favor of plaintiffs. As noted above, the court subsequently granted defendants' motion for a judgment notwithstanding the verdict with regard to Virginia Gore's claim.

II

On appeal, Virginia Gore claims that the trial court improperly granted defendants' motion for a judgment notwithstanding the verdict relative to her claim for loss of consortium. She contends that she was married to Mark Gore when the legal malpractice occurred and, therefore, is entitled to recover for loss of consortium on the legal malpractice claim.

While Virginia Gore was aware of Mark's physical condition when they married, neither was necessarily on notice that his physical condition was attributable to the medical malpractice committed in 1981. Since reasonable minds could differ concerning when the cause of action for medical malpractice was discovered, we cannot conclude as a matter of law that Virginia "married a cause of action" and thereby should be precluded from

pursuing a claim for loss of consortium. *Furby v Raymark Industries, Inc,* 154 Mich App 339, 347-348; 397 NW2d 303 (1986). Rather, the issue is one for the jury. *Kermizian v Sumcad,* 188 Mich App 690, 692-693; 470 NW2d 500 (1991); *Moss v Pacquing,* 183 Mich App 574, 583; 455 NW2d 339 (1990). Because, however, the jury was never instructed to determine when, through the exercise of reasonable diligence, plaintiffs discovered or should have discovered they had a possible cause of action, we must reverse the trial court's order granting defendants' motion for a judgment notwithstanding the verdict with regard to Virginia Gore's loss of consortium claim and remand this case for retrial on this issue.

III

We now turn to the issues raised in defendants' cross appeal.

A

Defendants first argue that certain evidence of the details of their breach of the standard of care was inadmissible and requires reversal. We disagree. Defendants admitted at trial that they breached the applicable standard of care by failing to pursue in a timely manner plaintiff's claim of medical malpractice. However, they disputed the merit of the underlying medical malpractice claim, thereby essentially denying liability for their professional malpractice.

The trial court permitted plaintiffs to call two of the individual defendants as witnesses over the objections of the defense. Defendants argue that their admission of negligence precluded any testimony concerning violation of the applicable profes-

sional standard of care. On appeal, defendants argue that the evidence was inadmissible and prejudicial.

The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Watkins,* 176 Mich App 428, 430; 440 NW2d 36 (1989); *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *Watkins, supra.* When reviewing a court's decision to admit evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of a kind which properly could be considered by the jury. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 405; 418 NW2d 478 (1988).

Defendants' admission that they breached the applicable professional standard of care was a judicial admission. Such an admission is generally made for the express purpose of dispensing with formal proof of a particular fact. *Macke Laundry Service Co v Overgaard,* 173 Mich App 250, 253; 433 NW2d 813 (1988). However, defendants cite no authority, and we find none, for the proposition that formal proof on an admitted point is forbidden, especially where the evidence is admissible for other purposes. In this case, we find that most of the testimony elicited from the individual defendants was relevant to the issue of damages.

Defendants have quoted the comment to SJI2d 17.01, which states:

> The jury should not be permitted to consider the question of liability where it has been admitted. It

is reversible error to submit any issue to the jury which has not been questioned or has been admitted.

In this case, there was no violation of the principle set out in the comment to SJI2d 17.01, because the jury was not permitted to consider the question whether defendants breached their standard of care in handling the case. The court instructed the jury:

> The defendants have admitted that they are liable to the plaintiff for any damages which the plaintiff might hve [sic] recovered in an action against Dr. Dickman, Dr. Carothers and Thorne Hospital. You are to decide only the question of whether plaintiff would have prevailed on his medical malpractice claim; and if so, the amount to be awarded to the plaintiff . . . .

The court clearly limited the jury's consideration of the testimony in question and precluded the jury from considering the question of defendants' liability for any injuries which may have occurred because of their negligence.

To the extent that some of the testimony elicited from the individual defendants constituted purely evidence relating to their judicial admission, any error arising out of the admission of such evidence was clearly harmless. Defendants have failed to explain how they were prejudiced by this testimony, and we have been unable to glean any prejudice from the record. In light of the trial court's clear instruction to the jury to focus on the underlying medical malpractice claim, we find no error requiring reversal regarding the disputed testimony.

B

Defendants next argue that the trial court

should have granted their motion for remittitur
with regard to the jury's separate award of
$60,000 for Mark Gore's "emotional damages" associ-
ated with the legal malpractice claim, because he
failed to prove a definite and objective physical
injury was produced as a result of emotional dis-
tress proximately caused by defendants' negligent
conduct. We disagree.

We first point out that defendants' assertion
that plaintiffs sought "emotional distress" dam-
ages is in error.[1] Plaintiffs never claimed emo-
tional distress damages, and the jury was not
instructed on such damages. Rather, plaintiffs
sought, and the case went to the jury on the basis
of jury instructions concerning, damages based on
consideration of pain and suffering, mental an-
guish, fright and shock, denial of social pleasure
and enjoyment, and embarrassment, humiliation,
or mortification.

The jury found that medical malpractice had
occurred, and damages were assessed accordingly.
The jury then went on to determine, pursuant to
the instructions that had been given without objec-
tion from the defense, that separate damages were
attributable to defendant law firm.

Under the circumstances, there is no require-
ment of physical harm to plaintiff Mark Gore as a
condition precedent to recovery of damages for
"emotional distress." The jury was not instructed
concerning any such condition of recovery, and the
record is silent concerning any request for such an

---

[1] Emotional distress damages are available in Michigan to a by-
stander who witnesses a negligent injury inflicted on a close family
member. *May v William Beaumont Hosp,* 180 Mich App 728, 749; 448
NW2d 497 (1989); *Pate v Children's Hosp of Michigan,* 158 Mich App
120, 123; 404 NW2d 632 (1986). Actual physical harm is an element of
damages for emotional distress which may also be available in other
tort actions. *Ledbetter v Brown City Savings Bank,* 141 Mich App
692, 703; 368 NW2d 257 (1985).

instruction by the defense. Moreover, on the facts of this case, physical injury was not required to establish entitlement to the "mental anguish" damages requested by plaintiffs.

The distinction between "emotional distress" damages and "mental anguish" damages is made in *Ledbetter v Brown City Savings Bank,* 141 Mich App 692, 701-705; 368 NW2d 257 (1985). Most pertinent to the case sub judice is the definition of mental anguish damages found in *Ledbetter, supra,* pp 703-704:

> Mental anguish damages, however, are not so circumscribed. A plaintiff is not limited to recovery for physical pain and anguish, but, rather, is entitled to damages for mental pain and anxiety which naturally flow from the injury, *i.e.,* for shame, mortification, and humiliation. *Beath v Rapid R Co,* 119 Mich 512, 517-518; 78 NW 537 (1899); *Grenawalt v Nyhuis,* 335 Mich 76, 87; 55 NW2d 736 (1952); *Veselenak* [v *Smith,* 414 Mich 567, 574; 327 NW2d 261 (1982)]. As the Supreme Court stated in *Veselenak:*
>
> "[J]uries are not asked to differentiate between mental states, such as shame, mortification, humiliation and indignity. Juries are asked to compensate mental distress and anguish, which flows naturally from the alleged misconduct and may be described in such terms as shame, mortification, humiliation and indignity. In addition, if the plaintiff is being compensated for *all* mental distress and anguish, it matters not whether the source of the mental distress and anguish is the injury itself or the way in which the injury occurred." (Emphasis in original.) 414 Mich 576-577.

It is not necessary to prove physical injury to be entitled to recovery for mental anguish damages under the circumstances of this case. A malpractice plaintiff is entitled to recover damages to the extent of the injury, which in this case includes

the underlying physical injury caused by the medical malpractice (failure to diagnose) and the mental anguish caused by the legal malpractice (failure to process the claim). *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 692; 310 NW2d 26 (1981).

Defendants admitted liability, and because there was evidence on the record from which the jury could determine that mental anguish damages were a legal and natural consequence of defendants' negligence, the jury's award should be allowed to stand. *Law Offices of Lawrence J Stockler, PC v Rose,* 174 Mich App 14, 33; 436 NW2d 70 (1989).

C

Defendants also claim that the trial court erred when it refused to give their requested jury instruction concerning Mark Gore's failure to minimize his damages. We note that discussions concerning the jury instructions occurred off the record. After the judge instructed the jury, defendants stated that they had no corrections of the instructions given, which did not include an instruction on minimizing damages. We further note that defendants requested such an instruction in their trial brief, which was filed with the clerk's office one day after the jury returned its verdict. Nonetheless, the lower court judge indicated that he would have his secretary bring him the trial briefs on the first day of trial, after defendants' attorney claimed that his trial brief was filed the Friday before trial.

Given defendants' failure to object to the instructions given, appellate review is precluded absent manifest injustice. *Janda v Detroit,* 175 Mich App 120, 126; 437 NW2d 326 (1989). We

believe that a mitigation of damages instruction such as SJI2d 53.05 applies when the plaintiff fails to minimize his damages after he knows of the injury. Mark Gore did not know that the doctors who had treated him at Thorne Hospital had failed to properly diagnose his condition. In fact, he testified that he failed to obtain a second opinion, even though his condition continued to cause him pain, because of what the surgeon at Thorne Hospital told him. We further note that defendants' experts testified that it was a breach of the standard of care for the physician who was treating Mark Gore not to follow up after he did not appear for further treatment. Under these circumstances, no manifest injustice resulted from the failure to give an instruction on Mark Gore's failure to mitigate his damages.

D

Finally, defendants claim that they are entitled to a new trial because of Mark Gore's testimony concerning numerous statements made by Dr. Lin, who did not testify. Defendants argue that these statements were improperly admitted hearsay. We note that defendants moved to preclude testimony concerning statements made by Dr. Lin to Mark Gore. The trial court declined to rule until confronted with the specific testimony and objection of defendants.

Gore began to testify about Dr. Lin's manner and statements made during the first visit. Defendants did not object, and plaintiff's counsel told Gore not to testify about what Dr. Lin had stated, because it was hearsay. Eventually, defendants' attorney did object, and Gore did not answer the question. Gore then testified that Dr. Lin told him that his "chances aren't too great." Defendants

objected and moved to strike. Plaintiff's attorney responded that the statement was not offered to prove the truth of the matter, but to show Mark Gore's fearful state of mind. The trial court agreed. Gore subsequently testified that he would continue to be fearful of the cancer returning until Dr. Lin told him otherwise. Defendants did not object. Mark Gore later testified that Dr. Lin told him that his chances of surviving the second surgery were fifty-fifty. Defendants did not object. When plaintiff's counsel asked Gore if Dr. Lin had given him "the all clear sign," defendants' attorney objected. Plaintiffs' attorney again claimed the statement went to Mark Gore's state of mind. The trial court ruled that Gore could testify regarding his expectations. Gore did so, and then testified: "I just wish he [Dr. Lin] could be here today, but he's too busy for these kind of things . . . ." Plaintiffs' attorney then told Gore that he should not "go into that." Gore then testified: "Well, I'm just trying to say, I wish he was here. You know, this would have been all over. This would be over." Defendants did not object.

Defendants sought to introduce a letter from plaintiffs' attorney to Dr. Lin in which plaintiffs' attorney asked Dr. Lin for his opinion of the original doctors' actions. Defendants claimed that the letter was probative to rebut the inference created by Mark Gore's testimony that Dr. Lin would have testified favorably to him. The court declined to admit the exhibit and instead stated that it would give an instruction on the matter. The trial court instructed the jury:

Dr. Lin's name has been mentioned in connection with this matter. Dr. Lin did not appear to testify in this case. You may not consider anything said by the plaintiff as to what Dr. Lin's testimony

would have been. You must assume that Dr. Lin had no opinion in this matter.

To the extent that defendants objected to Gore's testimony concerning statements made by Dr. Lin at trial, we hold that the matters were handled properly. To the extent that defendants did not object, no manifest injustice occurred.

Defendants also object to Gore's testimony concerning Dr. Lin's unavailability for trial. Again, defendants did not object, and, contrary to defendants' argument, we hold that the curative instruction was sufficient to cure any prejudice.

Defendants further claim that the trial court erred when it failed to admit the letter from plaintiffs' attorney to Dr. Lin. We disagree.

Defendants next argue that the trial court should have instructed the jury as provided in SJI2d 6:01. We disagree. There was no testimony that plaintiffs had control over Dr. Lin and failed to produce him. Again, the curative instruction given by the trial court was sufficient.

Finally, defendants claim that the cumulative effect of these errors denied them their right to a fair trial. Having found no error, we disagree.

IV

The jury's verdict in favor of Mark Gore for $60,000 on the medical malpractice claim underlying the legal malpractice claim is affirmed. The jury's separate verdict for $60,000 for Mark Gore's mental anguish damages resulting from the legal malpractice claim is affirmed. The trial court's order granting defendants' motion for a judgment notwithstanding the verdict as to the jury's award of $30,000 to Virginia Gore for loss of consortium is reversed and the case is remanded for a new trial of that issue.

Affirmed in part, reversed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MICHAEL J. KELLY, J., concurred.

GILLIS, P.J. (concurring in part and dissenting in part). While I agree with the remainder of the majority opinion, I would affirm the circuit court's order granting defendants' motion for a judgment notwithstanding the verdict with respect to Virginia Gore's loss of consortium claim and reverse the trial court's order denying defendants' motion for a judgment notwithstanding the verdict with respect to the jury's separate $60,000 verdict in favor of Mark Gore for emotional distress caused by the legal malpractice.

Dr. Lin removed Mark Gore's testicle on April 14, 1983, suspecting cancer. Malignant cancer was confirmed, and Mark Gore was scheduled to undergo a second surgery on May 9, 1983. Mark Gore and Virginia Gore married on May 7, 1983. Mark Gore underwent the second surgery to remove his lymph nodes on May 9, 1983.

After defendants notified plaintiffs that they would not file a medical malpractice suit on behalf of Mark Gore, he filed suit against defendants, alleging that they had failed to file a timely malpractice suit against doctors who had treated him at Thorn Hospital. On November 5, 1985, plaintiffs filed an amended complaint, adding Virginia Gore as a plaintiff and claiming that she had suffered a loss of consortium as the result of the legal malpractice.

Defendants filed a motion for summary disposition of Virginia Gore's loss of consortium claim, alleging that she had married Mark Gore after the removal of his testicle and, therefore, she had no loss of consortium claim.

In response, plaintiffs filed affidavits averring that, as a result of the legal malpractice, Mark Gore had suffered psychiatric damage that impaired his relationship with plaintiff Virginia Gore. Plaintiffs further averred that when they married, they did not know that plaintiff Mark Gore would have his lymph nodes removed two days later. The circuit court denied defendants' motion for summary disposition.

At trial, however, Mark Gore testified that he knew that the lymph node surgery was scheduled two days after his wedding and, therefore, he could not completely enjoy his wedding day. Moreover, Mark Gore testified that, after he first met with Dr. Lin, he began to fear that the doctors had committed malpractice in 1981 by failing to diagnose a cancerous tumor. Nonetheless, Mark Gore testified that he did not consult with an attorney because he was too worried about himself. After the second surgery, Mark Gore thought that he should consult an attorney, because any money he recovered could be used to support his family in the event that he did not survive.

Likewise, at trial, Virginia Gore testified that when she married Mark Gore, she knew that he was scheduled to have his lymph nodes removed two days later. Virginia Gore also testified that plaintiffs discussed seeing an attorney soon after Mark Gore's first visit with Dr. Lin. Virginia Gore further testified that plaintiffs went to see an attorney because they assumed that the doctors had committed malpractice when they failed to diagnose Mark Gore's cancer. Virginia Gore repeated that plaintiffs' discussion occurred shortly after a discussion with Dr. Lin.

On appeal, Virginia Gore claims that the trial court improperly granted the defendants' motion for a judgment notwithstanding the verdict with

regard to her claim. Virginia Gore contends that she was married to Mark Gore when the legal malpractice occurred and, therefore, is entitled to recover for loss of consortium with respect to the legal malpractice claim. In support of her contention that she is entitled to loss of consortium damages for the legal malpractice, Virginia Gore argues that the "suit within a suit" requirement, *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 692-693; 310 NW2d 26 (1981), does not apply and that Mark Gore could recover for the emotional distress that resulted from the legal malpractice.

I would hold that the "suit within a suit" requirement applied to this case because defendants failed to file the medical malpractice suit within the statute of limitations. Id., p 693.

Even if I accepted Virginia Gore's claim that the "suit within a suit" requirement did not apply, I would hold that Virginia Gore did not have a derivative claim for loss of consortium for the emotional damages Mark Gore suffered as the result of the legal malpractice. I note that Mark Gore claimed that he had suffered "great anxiety which is permanent" as a result of defendants' legal malpractice. In *Daley v LaCroix,* 384 Mich 4, 12-13; 179 NW2d 390 (1970), our Supreme Court held:

> [W]here a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

I do not think that *Veselenak v Smith,* 414 Mich

567; 327 NW2d 261 (1982), changed this requirement. Instead, I believe that a complete reading of *Veselenak* and *Ledbetter v Brown City Savings Bank,* 141 Mich App 692, 703; 368 NW2d 257 (1985), demonstrates that they are consistent with *Daley.*

Here, Mark Gore did not sustain any bodily injury at the time of the legal malpractice; therefore, he could recover for emotional distress only where a definite and objective physical injury was produced as a result of the emotional distress. I note that plaintiffs' failed to allege physical injury resulting from emotional distress. *Daley, supra.* In any event, plaintiffs testified that Mark Gore was upset by defendants' failure to return their telephone calls and answer their letters and by their receipt of defendants' June 25, 1985, letter. Plaintiffs' expert, who met with plaintiffs on two occasions in restaurants, testified that Mark Gore was depressed and stated his opinion that the subsequent legal malpractice exacerbated Mark Gore's depression. Plaintiffs' expert could not distinguish between the emotional damages caused by the medical and legal malpractice and failed to testify how Mark Gore's depression was exacerbated by the legal malpractice. Moreover, plaintiffs' expert testified that Mark Gore's depression primarily stemmed from his concern about his future (i.e., the reoccurrence of cancer because the alleged tumor went undiagnosed for a number of months). Plaintiffs testified that Mark Gore had trouble sleeping. Plaintiffs' expert testified that this was one of the manifestations of depression. Still, Mark Gore testified that his inability to sleep occurred after the cancer was diagnosed. Given this testimony, I am unable to conclude that Mark Gore suffered a definite and objective physical injury as the result of emotional distress proximately caused

by defendants' legal malpractice. As a result, Virginia Gore's derivative claim for loss of consortium must fail to the extent it is based on emotional distress suffered by Mark Gore as a result of the legal malpractice that occurred.

Virginia Gore also claims that she is entitled to bring a loss of consortium claim because she was married to Mark Gore when he discovered the existence of the underlying medical malpractice claim, which under the "suit within a suit" requirement would be part of plaintiffs' damages for legal malpractice. I agree with the trial court that Virginia Gore could not marry a cause of action. *Moss v Pacquing,* 183 Mich App 574; 455 NW2d 339 (1990); *Furby v Raymark Industries, Inc,* 154 Mich App 339; 397 NW2d 303 (1986). See also *Chiesa v Rowe,* 486 F Supp 236 (WD Mich, 1980). Plaintiffs' trial testimony confirmed that they believed that the physicians who treated Mark Gore at Thorne Hospital committed malpractice by failing to diagnose his testicular enlargement as cancer. Plaintiffs believed that malpractice occurred after Mark Gore's first meeting with Dr. Lin in early April, before plaintiffs' marriage. Moreover, Virginia Gore knew of the required surgery and its possible side effects before her marriage. Under these circumstances, I agree with the trial court that Virginia Gore did not have a cause of action for loss of consortium with regard to the underlying medical malpractice claim. I believe that the majority is distorting this record when it states: "While Virginia Gore was aware of Mark's physical condition when they married, neither was necessarily on notice that his physical condition was attributable to the medical malpractice committed in 1981." Plaintiffs need not have had a legal or a medical opinion that malpractice was committed before it could be said that they discov-

ered their cause of action. *Szatkowski v Isser,* 151
Mich App 264; 390 NW2d 668 (1986). Here, plain-
tiffs believed that the failure to diagnose the en-
larged testicle was malpractice after their first
meeting with Dr. Lin. I would hold that they
discovered their cause of action at that time and,
therefore, Virginia Gore was not entitled to loss of
consortium for the underlying medical malpractice
because she married Mark Gore having knowledge
of that claim.

Virginia Gore further claims that she was also
defendants' client because she had attended with
Mark Gore the meeting in defendants' office. Con-
sequently, Virginia Gore argues that the jury's
verdict represents appropriate damages for defen-
dants' breach of the standard of care with respect
to her. Plaintiffs' first amended complaint alleged
that Virginia Gore suffered mental anguish as the
result of defendants' conduct. While there was
some testimony by plaintiffs' that Virginia Gore
was upset, that condition appeared to be related to
Mark Gore's diagnosis of cancer. Once again, there
was no definite and objective physical injury pro-
duced as the result of emotional distress proxi-
mately caused by defendants' negligent conduct
and, therefore, Virginia Gore could not recover.
*Daley, supra.* Consequently, I would hold that the
trial court properly granted defendants' motion for
a judgment notwithstanding the verdict with re-
spect to the $30,000 judgment entered in favor of
Virginia Gore.

I now turn to the issues raised in defendants'
cross appeal. Defendants claim that the trial court
should have granted their motion for remittitur
with respect to the jury's separate award of
$60,000 for Mark Gore's emotional damages arising
out of the legal malpractice claim because he
failed to prove that a definite and objective physi-

cal injury was produced as a result of emotional distress proximately caused by defendants' negligent conduct. For the reasons discussed above, I agree. *Id.*

Hence, I would affirm the jury's verdict in favor of Mark Gore for $60,000 on the medical malpractice claim underlying the legal malpractice claim, as well as the trial court's order granting defendants' motion for a judgment notwithstanding the verdict with respect to the jury's award of $30,000 to Virginia Gore; however, I would reverse the jury's separate verdict for $60,000 for Mark Gore's emotional damages resulting from legal malpractice.