# STATE OF MICHIGAN

# COURT OF APPEALS

---

KATHLEEN ANN HOARD,

              Plaintiff-Appellant,

v

MARK J. STEVENSON, DDS and MARK J. STEVENSON, DDS PLC,

              Defendants-Appellees.

UNPUBLISHED
February 26, 2015

No. 318795
Kalamazoo Circuit Court
LC No. 2012-000634-NH

---

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

In this medical malpractice action plaintiff, Kathleen Ann Hoard, appeals as of right the trial court's order granting summary disposition to defendants, Mark J. Stevenson, DDS ("Dr. Stevenson") and Mark J. Stevenson DDS, PLC, pursuant to MCR 2.116(C)(7) (expiration of the statute of limitations). We reverse and remand.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of plaintiff's treatment by her dentist, Dr. Stevenson, and allegations that Dr. Stevenson was negligent in failing to diagnose her odontogenic myxoma lesions over the course of several years. The primary issues in this case are whether plaintiff's visits with Dr. Stevenson, which occurred over the course of several years, constituted new, distinct treatments for purposes of applying the statute of limitations, as well as when plaintiff should have reasonably discovered the existence of a possible cause of action. Facts as described herein are gleaned from plaintiff's dental records and her complaint, and the contents of her complaint are accepted as true.[1]

---

[1] "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Further, "[u]nlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive

On or about July 5, 2007, plaintiff began treating with Dr. Stevenson, who had recently become an employee of Dr. James Tonn, plaintiff's prior dentist.[2]  According to plaintiff's complaint, after Dr. Stevenson began working for Dr. Tonn, he became plaintiff's primary dentist.  In approximately 2009 or "early 2010," Dr. Stevenson purchased Dr. Tonn's dental practice upon the latter's retirement.  Plaintiff's complaint alleged that in each treatment during this period, and until 2012, Dr. Stevenson misdiagnosed plaintiff's lesions as harmless mandibular tori.  Specifically, plaintiff alleged that she saw Dr. Stevenson for various dental appointments on or about February 7, 2008, October 15, 2008, April 20, 2009, and May 5, 2010, and at each visit, Dr. Stevenson informed her that the lesions were harmless tori about which she should not be concerned.

Plaintiff next saw Dr. Stevenson on or about November 9, 2010, at which time he made the following notation concerning her condition: "Large bilateral mandibular tori.  Doctor thought it felt soft instead of hard.  We will continue to observe it (patient has had it for a few years.)."  Plaintiff alleged negligence on the part of Dr. Stevenson in connection with the November 9, 2010 visit, contending that he:

> negligently failed to suspect cancer or cysts and failed to advise Plaintiff the lesion(s) was now larger and bilateral in her mandibular jaw.  [Dr. Stevenson] failed to advise Plaintiff the consistency became soft rather than hard like tori, which is a small bone outgrowth.  [Dr. Stevenson] failed to advise Plaintiff the tori, now larger and bilateral, were clinically objectively growing, and now presenting as a soft lesion, which could be cancer or a cystic lesion.  [Dr. Stevenson] negligently failed to take in-office x-rays of Plaintiff's mandible to assist evaluation of the growing lesions or refer for x-rays, and negligently failed to advise Plaintiff of any of the above objective signs or symptoms of cancer or cyst, or negligent diagnosis or the availability of consultations; and therefore, Plaintiff detrimentally relied upon [Dr. Stevenson's] negligent affirmations, to her detriment, while the odontogenic myxoma lesions (ML) continued to progressively consume Plaintiff's jaw.  [Dr. Stevenson] negligently advised Plaintiff he would simply continue to observe the progressing bilateral lesions, even though he documented one or more existed 'for a few years.  [Dr. Stevenson's] negligence stated in this paragraph continued at each dental visit until the May 12, 2011 dental visit . . . .

Plaintiff alleged that Dr. Stevenson did not inform her about the changes noted above.

Plaintiff next saw Dr. Stevenson on May 12, 2011, for a cleaning, at which time he advised her that she should see an oral surgeon regarding the mandibular tori.  Dr. Stevenson scheduled an appointment for plaintiff to see an oral surgeon at Kalamazoo Oral & Maxillofacial

material.  The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant."  *Id*. (citation omitted).

[2] Although plaintiff's complaint makes reference to Dr. Tonn's failure to properly diagnose her odontogenic myxoma lesions over the course of several years, the record does not reveal any claims by plaintiff against Dr. Tonn, and Dr. Tonn was never a party to this lawsuit.

Surgery, P.C. on June 8, 2011. Although Dr. Stevenson made the referral, plaintiff alleged that he advised her that the oral surgeon would only "shave off the tori" and that there was "no immediacy for the referral." Plaintiff did not attend that appointment. Plaintiff saw Dr. Stevenson again on May 26, 2011, to have a cavity filled; however, Dr. Stevenson did not mention the referral at that time.

The next time plaintiff saw Dr. Stevenson was on February 14, 2012, at which time he again referred her to an oral surgeon and scheduled an appointment for March 13, 2012. The referral to an oral surgeon was simply, according to plaintiff, for the oral surgeon to "shave off the lesion." Plaintiff did not attend the March 13 appointment with the oral surgeon; however, she saw an oral surgeon on April 10, 2012. At that time, the oral surgeon diagnosed her as having not mandibular tori, but rather, odontogenic myxoma lesions, a condition that allegedly required "multiple" surgeries, including "excision surgery on plaintiff's jaw, extractions, grafting from [plaintiff's] leg and reconstructive surgery." According to plaintiff, she has "a debilitating quality of life, including significant reduced ability to eat," suffers from deformities, is subject to ongoing treatment, and requires "implantology, prosthodontics, restorative reconstruction and cosmetic/plastic surgery[.]"

On or about June 19, 2012, plaintiff filed her notice of intent ("NOI"), and on December 13, 2012, she filed her complaint. Defendants responded with a motion for a more definite statement, alleging that plaintiff's allegations were too broad. The trial court granted this motion, and plaintiff filed a second amended complaint on March 21, 2013, containing the allegations set forth above. Plaintiff alleged that Dr. Stevenson committed malpractice by continually failing to diagnose her myxoma lesions and by assuring her that the lesions were simply harmless mandibular tori. She alleged that her symptoms had been apparent at the outset of her treatment with Dr. Stevenson.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), contending that the statute of limitations on plaintiff's claims had expired, both under the two-year period of limitations and under the six-month discovery rule. On October 16, 2013, the trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(7). This appeal followed.

## II. TWO-YEAR LIMITATIONS PERIOD

This Court reviews de novo the trial court's grant of summary disposition pursuant to MCR 2.116(C)(7). *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). "Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Id.*

"A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within" certain, specified time periods. MCL 600.5805(1). "The period applicable to medical malpractice is two years from the accrual date." *Kincaid*, 300 Mich App at 523, citing MCL 600.5805(6). "However, when a plaintiff discovers a claim two or more years after the alleged negligent act occurred, then the plaintiff must commence an action '*within 6 months after the plaintiff discovers* or should have discovered *the*

*existence of the claim*, whichever is later.' " *Driver v Naini*, 490 Mich 239, 250; 802 NW2d 311 (2011), quoting MCL 600.5838a(2).

In order to file a medical malpractice action, the plaintiff must first give the defendant notice of her intent to do so "not less than 182 days before the action is commenced." MCL 600.2912b(1).[3]  See also *Kincaid*, 300 Mich App at 523.  "In order to ensure that a plaintiff receives the full benefit of the applicable period, the Legislature provided that the period of limitations is tolled for the 182–day notice period, but only if the plaintiff gave the notice before the expiration of the period of limitations." *Id.*, citing MCL 600.5856(c); *Driver*, 490 Mich at 249.

Here, plaintiff filed her NOI on June 19, 2012.  She filed her original complaint on December 13, 2011.  For purposes of this first issue, the parties dispute when plaintiff's claim for medical malpractice against defendants accrued.  If the claim accrued more than two years before plaintiff filed her NOI, the notice would not operate to toll the statute of limitations, and her complaint would be untimely.  See *Kincaid*, 300 Mich App at 523-524.  If, however, plaintiff alleged separate, distinct acts of malpractice that occurred within two years of the time she filed her NOI, her complaint would not be barred under the two-year limitations period.

As to when her claims accrued, we note that formerly, Michigan adhered to what was known as the "last treatment rule" for medical malpractice claims.  Under this rule, "the period of limitations would only begin to run after there was a break in the patient-physician relationship[,]" meaning that the last treatment marked the time when the statute of limitations began to run.  *Kincaid*, 300 Mich App at 524.  However, in 1986, "the Legislature abrogated the last-treatment rule for medical malpractice claims." *Id.* at 525.  Now, instead of focusing on the last treatment, the focus is on the act or omission that forms the basis of the plaintiff's claim.  As set forth in MCL 600.5838a(1):

> [A] claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional . . . accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

In *Kincaid*, 300 Mich App at 525, this Court explained that, by referring to the "act or omission" that formed the basis of the plaintiff's claim, the Legislature neither replaced the last-treatment rule with a "first-treatment rule," nor did it "limit a plaintiff to asserting a single claim for medical malpractice for any given injury."  Rather, the Court explained that "a plaintiff's injury can be causally related to multiple acts or omissions" such that it is "possible for the

---

[3] A claimant may file a lawsuit after 154 days if the health professional or facility at issue does not file a response to the NOI in accordance with MCL 600.2912b(7).  MCL 600.2912b(8).  Further, a plaintiff may sue at any time during the applicable notice period if the health professional or facility at issue informs the claimant in writing of its intent not to settle within the applicable notice period.  MCL 600.2912b(9).

plaintiff to allege multiple claims of malpractice premised on discrete acts or omissions—even when those acts or omissions lead to a single injury—and those claims will have independent accrual dates determined by the date of the specific act or omission at issue." *Id.* The panel in *Kincaid* provided guidance on the "nature of the pleadings and proofs that a plaintiff must allege or support with evidence in order to establish that the physician's adherence to an initial diagnosis or treatment plan constituted a discrete act or omission for purposes of establishing a later accrual date." *Id.*

In examining when a claim for malpractice accrues "[i]n the context of a physician's continued adherence to an initial diagnosis or treatment plan after the abrogation of the last-treatment rule," the Court in *Kincaid* explained that "it is insufficient to merely allege that the defendant breached the standard of care by continuing to adhere to the original diagnosis or treatment plan." *Id.* at 530, citing *McKiney v Clayman*, 237 Mich App 198, 207; 602 NW2d 612 (1999). "By failing to identify the facts that make the continued adherence unreasonable, the plaintiff reduces the claim to one alleging a continuing wrong, which the plaintiff cannot do[.]" *Id.* (internal citation omitted).

Nonetheless, this Court was quick to dispel any suggestion "that a physician is immunized from liability by simply adhering to a mistaken diagnosis or treatment plan at all subsequent appointments." *Id.* at 535. "Rather, a physician must act within the standard of care on *each* visit, and a physician's continued adherence to a particular diagnosis or treatment plan at a later appointment might constitute a breach of the standard of care if there are facts that show that continued adherence was unreasonable." *Id.*

> Moreover, if the continued adherence to the diagnosis or treatment plan constitutes a breach of the standard of care, the plaintiff may seek redress for the harms caused by that breach as a separate claim, even if the initial adoption of the diagnosis or treatment plan was itself outside the period of limitations. In other words, the plaintiff can plead and prove that his or her physician's failure to correct the initial diagnosis or treatment plan constituted a breach of the standard of care that was distinct from the initial adoption of the diagnosis or treatment plan. [*Id.*]

Therefore, the panel explained that:

> [i]n order to establish that continued adherence to an initial diagnosis or treatment plan constitutes a discrete act or omission on a date after the date when the initial diagnosis or plan was adopted, the plaintiff must plead—and be able to prove— facts that would establish that the continued adherence at the later point constituted a breach of the duty owed to the plaintiff. [*Id.* at 530-531.]

By way of a nonexhaustive list, the panel provided the following as examples of factual scenarios whereby the plaintiff could have alleged that the defendant in that case breached the standard of care by continuing to adhere to an initial diagnosis or treatment plan:

> it might have been a breach of the standard of care for [the defendant] to continue to adhere to an initial diagnosis or treatment plan in the face of evidence that [the

plaintiff's] symptoms had worsened or had not improved as expected under the initial treatment plan or after he received new test results. Similarly, if [the defendant] failed to physically examine [the plaintiff] at a subsequent visit and, as a result, did not have information that would have caused a reasonable physician to revise his or her diagnosis and treatment plan, the failure to conduct an examination might also constitute a distinct breach. [*Id.* at 535 n 4.]

Turning to the case at bar, we note that plaintiff alleged malpractice against Dr. Stevenson beginning in June 2007, and continuing through 2012. Thus, the issue becomes, for purposes of applying the two-year statute of limitations, whether plaintiff merely alleged that Dr. Stevenson continued to adhere to a mistaken diagnosis or treatment plan, or whether plaintiff alleged a new, distinct breach of the standard of care within the two-year period.

Construing the allegations in plaintiff's complaint in a light most favorable to her, we find that plaintiff alleged a new, distinct act or omission within the limitations period. Although Dr. Stevenson initially diagnosed plaintiff's condition as mandibular tori, that condition, according to the allegations contained in plaintiff's complaint, *changed* on November 9, 2010. On that date, according to plaintiff's complaint, Dr. Stevenson noted for the first time that the tori changed in character. He described the tori as "large" and "bilateral" and that they "felt soft instead of hard." According to plaintiff's complaint, Dr. Stevenson violated the standard of care by failing to inform her that "the tori, now larger and bilateral, were clinically objectively growing, and now presented as a soft lesion, which could be cancer or a cystic lesion." Plaintiff alleged that Dr. Stevenson violated the standard of care by failing to refer her for a surgical consultation *in light of the changes to the lesions*. She stated that Dr. Stevenson should have made a timely referral "after 14, or at the most, 21 days of ongoing clinical mouth lesions that progressed to bilateral large lesions as of November 9, 2010." As recognized by this Court in *Kincaid*, 300 Mich App at 535, "a physician must act within the standard of care on *each* visit, and a physician's continued adherence to a particular diagnosis or treatment plan at a later appointment might constitute a breach of the standard of care if there are facts that show that continued adherence was unreasonable." As an example of an unreasonable adherence to an original diagnosis, the panel in *Kincaid* cited a hypothetical scenario where a plaintiff's condition or symptoms worsened. *Id.* at 535 n 4. Here, plaintiff alleged a change in her condition—that the lesions grew, became bilateral, and became soft, rather than hard. The failure to correct the original diagnosis, in light of these new facts, constituted a purported breach of the standard of care that was distinct from the initial diagnosis that the lesions were merely mandibular tori. See *id.* at 535. Thus, plaintiff pled sufficient "facts that would establish that the continued adherence at the later point constituted a breach of the duty owed to the plaintiff" and that her claim should have withstood a motion for summary disposition under MCR 2.116(C)(7). See *id.* at 530-531. Under MCL 600.5838a(1), plaintiff should be able to pursue her malpractice claim against Dr. Stevenson for all dates after November 9, 2010.

In arguing that plaintiff's claims are untimely under the two-year limitations period, defendants argue that all of plaintiff's claims concern Dr. Stevenson's original diagnosis of mandibular tori. In support, defendants point to allegations in plaintiff's complaint wherein she alleges a breach of the standard of care dating back to her first visit with Dr. Stevenson—and with Dr. Tonn, for that matter—and argue that these allegations are the type of general allegations that do not constitute new, distinct claims of malpractice. A primary example of one

-6-

of the passages of plaintiff's second amended complaint that defendants cite is paragraph 28, which states, in pertinent part:

> On July 5, 2007, Plaintiff received a prophylaxis followed by a clinical exam performed by [Dr. Stevenson] after the registered dental hygienist completed the prophylaxis. At this treatment as in <u>each</u> treatment from 1998 through Spring 2012, Plaintiff felt the lesion with her tongue and finger, and always observed the lesion protruding from her gum tissue in her lower left jaw midway between her tongue and her teeth. This lesion is what Dr. Tonn, the registered dental hygienist, and [Dr. Stevenson] <u>always</u> confirmed was torus or tori.

Viewed in isolation, these allegations tend to appear similar to the general allegations that this Court in *Kincaid* and *McKiney* deemed insufficient to allege new, distinct acts of malpractice. Indeed, these types of allegations appear to be general allegations that refer to the original misdiagnosis of the myxoma lesions, i.e., the initial treatment with Dr. Stevenson on July 5, 2007. See *Kincaid*, 300 Mich App at 536-537 ("Reading [the plaintiff's] complaint in the light most favorable to her, she alleged that [the defendant] breached the standard of care on the first day of treatment and that all subsequent treatment was a mere continuation of these allegedly improper acts and omissions; therefore, they could not serve as discrete acts or omissions for purposes of the accrual date.").

However, what defendants ignore is that, in addition to these allegations, plaintiff's complaint contains allegations relating to the November 9, 2010 visit. At that visit, according to plaintiff's complaint, the nature of her condition changed, and Dr. Stevenson failed to properly diagnose her condition in light of the new facts. This allegation is sufficient to allege a new, distinct act of malpractice that would permit plaintiff's claim to survive a motion for summary disposition under MCR 2.116(C)(7). See *Kincaid*, 300 Mich App at 535. Indeed, "a physician must act within the standard of care on *each* visit, and a physician's continued adherence to a particular diagnosis or treatment plan at a later appointment might constitute a breach of the standard of care if there are facts that show that continued adherence was unreasonable." *Id.*

## III. DISCOVERY RULE

In an effort to be able to pursue her claim with regard to all of Dr. Stevenson's treatment—including treatment dates that occurred before November 9, 2010, plaintiff argues that she could not have reasonably discovered the existence of her malpractice claim until April 10, 2012, based on her referral to an oral surgeon, and that her entire claim is timely under the six-month discovery rule.

"The period applicable to medical malpractice is two years from the accrual date." *Kincaid*, 300 Mich App at 523, citing MCL 600.5805(6). "However, when a plaintiff discovers a claim two or more years after the alleged negligent act occurred, then the plaintiff must commence an action '*within 6 months after the plaintiff discovers* or should have discovered *the existence of the claim*, whichever is later.' " *Driver*, 490 Mich at 250, quoting MCL 600.5838a(2). With the exception of cases involving minors under a certain age, "the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim." MCL 600.5838a(2). "The burden of proving that the plaintiff, as a result of physical

discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff." MCL 600.5838a(2).

"The six-month discovery rule period begins to run in medical malpractice cases when the plaintiff, on the basis of objective facts, is aware of a possible cause of action." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 232; 561 NW2d 843 (1997). "This occurs when the plaintiff is aware of an injury and a possible causal link between the injury and an act or omission of the physician." *Id.* The rationale for this objective standard is that "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Id.* at 223. "Under the six-month discovery rule, the plaintiff has the burden of establishing that she did not discover or could not have discovered through the exercise of reasonable diligence the existence of a possible medical malpractice claim more than six months before she filed her complaint." *Turner v Mercy Hosps & Health Servs of Detroit*, 210 Mich App 345, 353; 533 NW2d 365 (1995). The plaintiff must act in a diligent manner. *Id.* See also *Moll v Abbott Laboratories*, 444 Mich 1, 29; 506 NW2d 816 (1993) ("The law imposes on a plaintiff, armed with knowledge of an injury and its cause, a duty to diligently pursue the resulting legal claim.").

In applying the six-month discovery rule, "courts should consider the totality of information available to the plaintiff, including his own observations of physical discomfort and appearance, his familiarity with the condition through past experience or otherwise, and his physician's explanations of possible causes or diagnoses of his condition." *Solowy*, 454 Mich at 227. "[I]n the absence of disputed facts, the question whether a plaintiff's cause of action is barred by the statute of limitations is a question of law to be determined by the trial judge." *Id.* at 230 (citation and quotation omitted). However, if there is a question of fact concerning when a plaintiff should have discovered a possible cause of action, the factual dispute must be submitted to a jury. *Kincaid*, 300 Mich App at 523; *Kermizian v Sumcad*, 188 Mich App 690, 691; 470 NW2d 500 (1991). See also *Simmons v Apex Drug Stores, Inc.*, 201 Mich App 250, 254; 506 NW2d 562 (1993) ("Summary disposition under MCR 2.116(C)(7) should not be granted if there are factual disputes regarding when discovery occurred or reasonably should have occurred.").

Here, it is undisputed that in May 2011, Dr. Stevenson referred plaintiff to an oral surgeon and that she did not attend the appointment with the oral surgeon. When she finally attended an appointment with an oral surgeon in April 2012, she discovered that the condition in her mouth, which she previously believed was mandibular tori, was more serious, prompting her to file her notice of intent in June 2012. The trial court found that, had plaintiff kept her original appointment with an oral surgeon—which was scheduled to take place in June 2011, she would have discovered a possible cause of action at that time. The trial court found that plaintiff failed to act diligently by not attending the appointment, and that plaintiff should have discovered the existence of her claim in June 2011. Thus, her claims were untimely. The issue on appeal becomes whether, based on the totality of the information known by plaintiff—as alleged in plaintiff's complaint and contained in the trial court record—plaintiff reasonably should have discovered the existence of her claim in June 2011.

Based on the totality of the information available to plaintiff, there was a question of fact as to when plaintiff should have discovered her claim and whether she acted reasonably in not attending the referral to the oral surgeon in June 2011. Although Dr. Stevenson made a referral for plaintiff on a specific date and gave plaintiff directions to the office at which the appointment was supposed to take place, plaintiff's second amended complaint alleges that Dr. Stevenson "advised Plaintiff that there was no immediacy for the referral . . ." And, significantly, plaintiff's complaint alleged that Dr. Stevenson told her that the referral was not for further diagnosis of her mandibular tori; rather, the referral was simply so that the oral surgeon could "shave off the tori."[4] At this time, plaintiff alleged that she did not know that the lesions in her mouth, which she believed to be harmless mandibular tori, had changed, as she alleged that she was unaware of the changed nature of the lesions that Dr. Stevenson observed during the November 9, 2010 visit. Viewed in totality, plaintiff alleged that Dr. Stevenson referred her for a procedure that would not treat or diagnose the tori, but instead would simply shave it down. There was no immediacy for this procedure, and plaintiff did not have any knowledge to suggest that her condition was anything other than the harmless tori she had had for several years at this point. Essentially, then, plaintiff alleged that the referral was nothing more than a cosmetic procedure—which did not require immediate action—to shave off a condition that she had had for years.

On the facts alleged in plaintiff's complaint, plaintiff did not have any indication that something was wrong or that there was an immediate need to learn more about the condition that had existed, in her mind, unchanged for several years. Plaintiff has satisfied her burden of establishing that, based on representations made to her, a question of fact existed as to when she should have discovered the existence of a possible malpractice claim against Dr. Stevenson. See MCL 600.5838a(2) (placing the burden on the plaintiff to prove, "as a result of physical discomfort, appearance, condition, or otherwise" that she "neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim . . . ."). A reasonable jury could, on the basis of these facts, conclude that plaintiff, through the exercise of reasonable diligence, neither knew nor should have known about the existence of a possible cause of action at the time Dr. Stevenson made the May 12, 2011 referral to an oral surgeon. Alternatively, a reasonable jury could, based on the fact that Dr. Stevenson made an appointment in the following month for a matter that was allegedly not urgent, conclude that plaintiff should have exercised reasonable diligence, by going to the appointment and discovering the existence of a possible cause of action. Indeed, plaintiff ignored a referral that Dr. Stevenson made for a specific date, failing to see an oral surgeon for over a year. Therefore, the question of when she knew or should have known about the existence of a possible cause of action would be a question for a jury to decide. The trial court erred when it dismissed plaintiff's claims as untimely. See *Kermizian*, 188 Mich App at 691.

Because there is factual dispute concerning whether plaintiff knew or should have known about the existence of a possible malpractice claim as early as June 2011, the jury must decide whether the discovery period began to run in June 2011, or at a later date, such as April 2012,

---

[4] The referral slip does not contradict that allegation, as it simply lists the purpose of the referral as a "consult[.]"

when plaintiff finally went in for her referral, or perhaps on or about February 2012, which is the next time Dr. Stevenson mentioned the referral *after* mentioning it in 2011. If a jury determines that plaintiff did not know or should not have known about the existence of a possible cause of action until after her February 2012 visit with Dr. Stevenson or her April 2012 visit with an oral surgeon, application of the six-month discovery rule would allow her to pursue her malpractice claim for all of her treatment dates with Dr. Stevenson. Indeed, she filed her notice of intent within six months of either date. And, because all of plaintiff's treatment dates with Dr. Stevenson are within the six-year statute of repose set forth in MCL 600.5838a(2), she could pursue her malpractice claim with regard to all of the dates on which she alleged Dr. Stevenson was negligent. Here, plaintiff alleged that Dr. Stevenson first began treating her in June 2007; this date was within six years of the date plaintiff first initiated this action, i.e., June 19, 2012. See MCL 600.5838a(2) ("the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim.").

IV. ALTERNATE GROUNDS FOR AFFIRMANCE ALLEGED BY DEFENDANTS

As an alternate grounds for affirmance, defendants argue that this Court should affirm the trial court's grant of summary disposition because plaintiff filed an invalid affidavit of merit. Plaintiff does not respond to this issue, other than to argue that it is not properly before this Court because defendants did not file a cross-appeal. However, defendants' alternate ground for affirmance is properly before this Court "because an appellee is not required to file a cross-appeal to urge an alternate ground for affirming the trial court's order." *Vanslembrouck v Halperin*, 277 Mich App 558, 565; 747 NW2d 311 (2008). Whether an affidavit of merit complied with the requirements of MCL 600.2912d is a question of law that this Court reviews de novo. *Lucas v Awaad*, 299 Mich App 345, 377; 830 NW2d 141 (2013). While we consider the argument, we find it to be without merit.

On March 8, 2013, defendants challenged the validity of the affidavit of merit signed by Dr. Roger Druckman that was attached to plaintiff's complaint. Defendants were served with the affidavit of merit on December 26, 2012. MCR 2.112(L)(2) sets forth the procedure for challenging an affidavit of merit in a medical malpractice action. The rule provides, in pertinent part, that unless the court allows a later challenge for good cause:

> all challenges to an affidavit of merit or affidavit of meritorious defense, including challenges to the qualifications of the signer, must be made by motion, filed pursuant to MCR 2.119, *within 63 days of service of the affidavit on the opposing party.* An affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301. [MCR 2.112(L)(2)(b) (emphasis added.)]

Defendants challenge to plaintiff's affidavit of merit was untimely under MCR 2.112(L)(2)(b). Defendants were served with the affidavit on December 26, 2012; they had 63 days to challenge the affidavit pursuant to MCR 2.112(L)(2)(b). That 63-day window expired on February 27, 2013. Defendants' March 8, 2013 challenge was therefore untimely.

Moreover, putting aside the merits of defendants' challenge to plaintiff's affidavit of merit, the appropriate remedy for an invalid affidavit of merit is dismissal without prejudice, not

summary disposition, which constitutes a decision on the merits. *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007). See also *Ligons v Crittendon Hosp*, 490 Mich 61, 75; 803 NW2d 271 (2011). As explained by our Supreme Court in *Kirkaldy*, 478 Mich at 586:

> [I]f the defendant believes that an affidavit is deficient, the defendant must challenge the affidavit. If that challenge is successful, the proper remedy *is dismissal without prejudice*. The plaintiff would then have whatever time remains in the period of limitations within which to file a complaint accompanied by a conforming affidavit of merit. [Internal citation omitted; emphasis added.]

Accordingly, even if timely, defendants' challenge to the affidavit of merit would not constitute an alternate ground for affirmance.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher