KOCHOIAN v ALLSTATE INSURANCE COMPANY

Docket No. 93950. Submitted February 2, 1988, at Detroit. Decided
April 18, 1988.

Mesroh Kochoian suffered a heart attack nearly three months
after he was injured in a motor vehicle accident. He brought an
action in the Wayne Circuit Court against Allstate Insurance
Company for work loss benefits, alleging that the heart attack
arose out of the accident. The court, Richard C. Kaufman, J.,
entered a judgment of no cause of action and denied plaintiff's
motion for a new trial or judgment notwithstanding the ver-
dict. Plaintiff appealed, alleging that the trial court erred in
requiring too high a degree of proof of causal connection
between the heart attack and the accident, by considering the
length of time between the accident and the heart attack, by
denying him a new trial, and by excluding certain evidence.

The Court of Appeals held:

1. The court did require too high a degree of proof of causal
connection between the injury and the accident but, even
employing the correct standard, plaintiff failed to prove the
connection. The court correctly found the heart attack to be an
independent disabling injury.

2. The court did not err in considering the length of time
between the accident and the heart attack in determining the
connection between the two.

3. The grant or denial of a motion for a new trial is within
the discretion of the trial court and a reviewing court will give
deference to the trial judge's decision and will not substitute its
judgment for that of the trial judge unless a review of the
record reveals an abuse of discretion. The Court of Appeals
found no abuse of discretion.

4. A trial court's decision whether to admit certain evidence
is within the court's discretion and will not be disturbed on

REFERENCES

Am Jur 2d, Appeal and Error §§ 772 et seq., 880 et seq.; Automobile
Insurance §§ 340 et seq., 446 et seq.

See the annotations in the Index to Annotations under Automobile
Insurance; No-fault Insurance; and Proximate Cause.

appeal absent a showing of abuse of discretion. The Court of Appeals found no abuse of discretion.

Affirmed.

1. INSURANCE — NO-FAULT — WORK LOSS BENEFITS — BURDEN OF PROOF.

A claimant seeking personal protection benefits must show by a preponderance of the evidence that his injury arose out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS.

Personal injury protection benefits for injuries arising out of the use of a motor vehicle as a motor vehicle are provided only where the causal connection between an injury and the use of the motor vehicle as a motor vehicle is more than incidental, fortuitous or "but for."

3. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — INJURY — EVIDENCE.

The length of time between the accident and the injury may be a relevant consideration in determining a causative link between the two for purposes of determining eligibility for personal protection benefits.

4. NEW TRIAL — APPEAL.

The grant or denial of a motion for a new trial is within the discretion of the trial court and a reviewing court will give deference to the trial judge's decision and will not substitute its judgment for that of the trial judge unless a review of the record reveals an abuse of discretion.

5. EVIDENCE — APPEAL.

A trial court's decision whether to admit certain evidence is within the court's discretion and will not be disturbed on appeal absent a showing of abuse of discretion.

*O'Bryan Law Center, Inc.* (by *D. Michael O'Bryan*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *John J. Hoffman* and *Robert D. Goldstein*), for defendant.

Before: WAHLS, P.J., and J. B. SULLIVAN and F. BALKWILL,* JJ.

WAHLS, P.J. After a bench trial in the Wayne Circuit Court conducted on March 17 and 18, 1986, the court, on May 9, 1986, entered a judgment of no cause of action in this no-fault insurance work loss case. On June 27, 1986, plaintiff's motion for new trial or judgment notwithstanding the verdict was denied. We affirm.

The record reveals that plaintiff, Mesroh Kochoian, filed suit on November 16, 1982, against defendant, Allstate Insurance Company, for payment of no-fault insurance work loss benefits as provided under MCL 500.3107(b); MSA 24.13107(b). At trial, plaintiff testified and the deposition testimony of four expert medical witnesses was admitted into evidence.

Plaintiff, a truck driver for Signal Delivery for nearly thirty years, testified that on March 2, 1982, while hauling a load of freight from Livonia, Michigan, to Columbus, Ohio, over highways which were covered with ice, his truck jackknifed and rolled down a twenty-foot embankment. As a result, he sustained broken bones in his right arm and left ankle, injury to his left knee, and pain in his left shoulder, left arm, neck and back. He was treated at a hospital and was released the following day. Plaintiff stated that prior to the accident, in 1977, he had been diagnosed as having high blood pressure, and he acknowledged that prior to the accident he had experienced pain in his left shoulder and "some mild angina."

After the accident, plaintiff's employer sent plaintiff to the Detroit Industrial Clinic, where he was treated approximately twice a week until May 27, 1982. On that day, he received heat and elec-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tronic massage therapy and was given an injection of cortisone in his left shoulder. That afternoon, plaintiff felt an unusual pressure in his chest, and at about 9:00 P.M. he went to Oakwood Hospital, where he was diagnosed as having suffered a heart attack. On cross-examination, plaintiff conceded that in 1970 he had had back problems which caused him to miss work and allowed him to collect workers' compensation benefits and that his angina started in 1980. Moreover, he acknowledged that he had smoked two packs of cigarettes per day, quitting only upon his doctor's orders, that in 1982 he was approximately sixty pounds overweight, that both of his parents died of causes related to heart disease, and that prior to the accident he drank liquor, sometimes as much as a fifth of a gallon in one day.

The deposition testimony of four medical doctors was admitted into evidence. First, Donald Newman, M.D., a physician specializing in family medicine and disability evaluation, testified for plaintiff. Dr. Newman said that on April 7, 1984, he examined plaintiff and determined that he suffered some limitation in the range of motion of his neck, left shoulder, left triceps muscle and back, and that plaintiff's abnormal heart sounds and electrocardiogram results indicated that he had sustained damage to his heart as may have occurred from a heart attack or myocardial infarction. Moreover, x-rays revealed that abnormalities in plaintiff's neck showed degenerative disc disease or osteoarthritis, also known as wear-and-tear arthritis, causing the nerve going down plaintiff's left arm to be pinched. The extensive arthritis in plaintiff's neck, in Dr. Newman's opinion, had not been caused by the accident, but rather was a preexisting condition which was aggravated by the accident. Dr. Newman also opined that plaintiff's heart attack was

likely the result of his family history of heart problems, high blood pressure, smoking, and stress associated with the physical pain and the emotional upset from being unemployed after the accident.

Norman E. Clark, M.D., a physician specializing in internal medicine with a concentration in cardiology, testified for defendant. Dr. Clark said that on October 10, 1983, he examined plaintiff and evaluated his condition on the basis of his family history, physical condition and electrocardiogram results, concluding that plaintiff's heart attack was unrelated to plaintiff's accident and instead was caused by his family history, cigarette smoking, being overweight, and age (sixty-one at the time of the accident). Dr. Clark asserted that the kind of stress accompanying pain from physical injury or arthritis, or from emotional upset caused by worries over unemployment, would not play a part in the causation of a heart attack, and expressed the view that plaintiff's accident would have been related to his heart attack only if the attack had been suffered "right at the time of the . . . accident or within say an hour of the . . . accident when [Mr. Kochoian] was in a lot of pain—under considerable stress from the accident."

James Horvath, M.D., an orthopedic surgeon who examined plaintiff in August, 1983, testified for defendant and concluded that, in general, plaintiff had a normal range of motion in his neck, back, and left shoulder. Finally, Adel Elmagrabi, M.D., a rheumatologist, testified for defendant and also concluded that, although plaintiff complained of discomfort at the extremes of range of motion testing, he nevertheless was able to perform the tests within the normal ranges.

On appeal, plaintiff first argues that the trial court erred in requiring him to show that, in order

to prove entitlement to no-fault work-loss benefits, his May 27, 1982, heart attack was "directly traceable" to the March 2, 1982, truck accident. Plaintiff asserts that he should have been required to show by a preponderance of the evidence only that his injury "arose out of" the accident.

Work loss benefits are included in the personal protection benefits payable under Michigan no-fault law. MCL 500.3107(b); MSA 24.13107(b). However, a no-fault insurer is liable to pay personal protection benefits "for accidental bodily injury *arising out of* the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1); MSA 24.13105(1). (Emphasis added.) The trial court in this case, in rendering its opinion from the bench, did not, however, examine whether plaintiff's injury arouse out of his use of a motor vehicle at the time of his March 2, 1982, accident, but rather examined "whether or not plaintiff has proven by a preponderance of the evidence that an accidental bodily injury [was] *directly traceable* to [the] motor vehicle accident," and concluded that "the Court does not find the plaintiff has shown by a preponderance of the evidence that the heart attack and the permanent disability because of the heart attack is [*sic*] *directly traceable* to [the] accidental bodily injuries arising from the motor vehicle accident on March 2nd, 1982." (Emphasis added.)

Apparently, the trial court gleaned this "directly traceable" language from cases concerning, or commenting on, coverage for injuries arising out of the use of a parked motor vehicle. See, e.g, *Ritchie v Federal Ins Co,* 132 Mich App 372; 347 NW2d 478 (1984), *McKim v Home Ins Co,* 133 Mich App 694; 349 NW2d 533 (1984), lv den 422 Mich 853 (1985), and *Mollitor v Associated Truck Lines,* 140 Mich App 431; 364 NW2d 344 (1985). Under MCL

500.3106(1)(b); MSA 24.13106(1)(b), it is provided that accidental bodily injury does not arise out of the use of a parked vehicle unless, among other exceptions, "the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated, or used . . . ."

In the present case, plaintiff is not claiming entitlement to personal injury benefits under the parked-vehicle provision and, therefore, need not specifically demonstrate that his heart attack was the "direct result" or, as the trial court stated, was "directly traceable," to the use of his truck. Instead, he is required to demonstrate only that his heart attack constituted an injury "arising out of" the use of his truck. We recognize that the terms represent differences in degree and not in kind: i.e., while they both require a measure of causation between the injury suffered and the use of a motor vehicle as a motor vehicle, those measures are unequal. The word "directly" in the phrase directly traceable seems to demand a higher degree of causation than does the term arising out of.

We detect no error requiring reversal in this case, despite the trial court's reliance on the higher degree of causation, however, because we are convinced—after an assiduous perusal of the record—that even under the "arising out of" standard plaintiff failed to prove his case by a preponderance of the evidence. MCR 2.613(A). Indeed, our review of the evidence convinces us that the trial court was correct in concluding that plaintiff's heart attack, far from being caused by his accident, instead constituted "an independent disabling injury that prevented him from working." Thus, since plaintiff would be entitled to work-loss benefits to compensate only for that amount he

would have received had the accident-related injury not occurred, MCL 500.3107(b); MSA 24.13107(b), *Luberda v Farm Bureau General Ins Co,* 163 Mich App 457, 460-461; 415 NW2d 245 (1987), the trial court reached the right result in declaring plaintiff excluded from work-loss coverage.

We reach this conclusion while well aware that the term "arising out of" does not require a showing of proximate causation, but rather something more than a showing that the causal connection between the injury and the use of the motor vehicle was merely incidental, fortuitous, or "but for." *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986); *Krause v Citizens Ins Co of America,* 156 Mich App 438, 440; 402 NW2d 37 (1986); see also *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 313-314; 282 NW2d 301 (1979), lv den 407 Mich 895 (1979). In *Thornton, supra,* pp 659-660, the Supreme Court stated:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." . . . Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits. [Emphasis in original.]

Whether an injury may be characterized as

"arising out of" the use of a motor vehicle for purposes of no-fault personal protection benefits, and thus based on a relationship with the use of the motor vehicle which is more than merely incidental, fortuitous or "but for" with that use—or, put differently, is not so remote or attenuated as to preclude a finding that it arose out of the use of a motor vehicle—is a determination which depends on the unique facts of each case and, thus, must be made on a case-by-case basis. In the present case, the facts reveal that plaintiff's parentage, habits and preexisting physical condition clearly predisposed him to the heart attack which occurred almost three months after his truck accident. He acknowledged, among other things, being overweight, having smoked heavily for thirty years, having parents who died of causes related to heart disease, having suffered from angina since 1980, and having high blood pressure since 1977. In view of these circumstances, we find little indeed to support plaintiff's assertion that his heart attack was caused by his use of the truck during his March 2, 1982, accident.

Plaintiff also argues on appeal that the trial court erred in concluding that the nearly three-month period between the accident and the heart attack made it less likely that the former caused the latter. In support of this assertion, plaintiff cites *Wheeler v Tucker Freight Lines Co, Inc,* 125 Mich App 123; 336 NW2d 14 (1983), lv den 418 Mich 867 (1983). In that case, the plaintiff, a truck driver, was denied personal protection benefits for a claimed accidental back injury which was sustained due not to an accident at any one moment but rather to a series of events spanning a nineteen-year period. This Court affirmed, stating that the Legislature intended to authorize the payment of personal protection insurance benefits under

MCL 500.1305(4); MSA 24.13105(4) only "for an injury sustained in a single accident, having a temporal and spatial location." 125 Mich App 128. We fail to discern the significance of *Wheeler* to the present case, however, since plaintiff herein—although he was a seasoned truck driver—was, in fact, involved in a single accident at a specific time and in a specific place. Moreover, we have been presented with no persuasive reason—nor do we independently perceive one—for prohibiting a trial court from considering the length of time, in cases such as this, between the accident and the injury when faced with the often complex issue of apprehending the causative link, if any, between two such events. It is only logical to conclude that, as the period of time between accident and injury increases, so likewise may increase the number of possible other causes for the injury sustained. Therefore, the trial court's consideration of the time period between plaintiff's accident and his heart attack, such period being almost three months, was not erroneous, particularly in view of the expert medical testimony that plaintiff's heart attack would probably have been related to his accident only if the attack had been suffered within an hour or so of the accident.

Next, plaintiff contends that the trial court's denial of his motion for a new trial was improvident because the trial court's own findings of fact establish that plaintiff's heart attack on May 27, 1982, was caused by the injection of cortisone he received a few hours before the attack and that the injection was itself administered due to pain he was experiencing in his left shoulder as a result of the March 2, 1982, truck incident.

It is within a trial court's sound discretion to grant or deny a motion for new trial. *Murphy v Muskegon Co,* 162 Mich App 609, 615-616; 413

NW2d 73 (1987). Absent an abuse of such discretion, the trial court's decision cannot be interfered with on appeal. *Kailimai v The Firestone Tire & Rubber Co,* 398 Mich 230; 247 NW2d 295 (1976). This Court, in reviewing a trial court's denial of such a motion, affords deference to that denial because the lower court heard the witnesses and thus was uniquely qualified to assess their credibility. *May v Parke, Davis & Co,* 142 Mich App 404, 410-411; 370 NW2d 371 (1985), lv den 424 Mich 878 (1986). In the present case, we find no abuse of discretion in the trial court's denial of plaintiff's motion for new trial.

Initially we note that plaintiff's assertion on appeal that the trial court found that "Plaintiff's heart attack was caused by the injection [of cortisone] he received for treatment to orthopedic injuries sustained in the motor vehicle accident" is not exactly an accurate restatement of the court's finding. Our review of the court's findings reveals that, after identifying numerous factors as having caused plaintiff's heart attack, including family history, smoking, and high blood pressure, the court concluded that the injection of cortisone administered to plaintiff shortly before his heart attack—in combination with these other factors—was likely to have precipitated the heart attack. However, even if we accept plaintiff's mischaracterization of the court's finding on this issue, we cannot accept his conclusion that he is entitled to no-fault work loss benefits. For, agreeing with the trial court, we find that plaintiff has not shown that the injection was administered due to pain he was experiencing as a result of the March 2, 1982, truck accident. Plaintiff's own testimony, and the expert medical testimony that plaintiff suffered from wear-and-tear arthritis, showed that plaintiff's shoulder condition long predated his truck

accident. Thus, we cannot assume that, without the truck accident, plaintiff would not have been given the cortisone injection on May 27, 1982, for his shoulder condition.

Finally, plaintiff contends that the trial court improperly excluded from evidence a written report of one of defendant's medical experts. At trial, plaintiff's request for admission into evidence of a report of Dr. Norman E. Clark on the ground that it was not hearsay under MRE 801(d)(2)(C)—admission by a person authorized by a party to make a statement and offered against the party—was denied by the trial court.

A trial court's decision whether to admit certain evidence is within the court's discretion and will not be disturbed on appeal absent a showing of abuse of discretion. *Guider v Smith,* 157 Mich App 92, 103-104; 403 NW2d 505 (1987) (opinion of C. W. SIMON, J). In this case, we find no abuse of discretion.

Plaintiff asserts that Dr. Clark was a person authorized by defendant to make a statement regarding plaintiff's physical health and that the statement which he made—as embodied in a report written on October 11, 1983—constitutes an admission against defendant. We fail to discern, however, any basis for plaintiff's declaration that the substance of Dr. Clark's report, even assuming that Dr. Clark was authorized by defendant to make a statement on this subject, constitutes an admission. In his report, Dr. Clark stated that his examination of plaintiff revealed no indication of plaintiff's having suffered a heart attack or heart disease. During his direct examination, Dr. Clark initially restated almost verbatim what his report had indicated about plaintiff based on a physical examination and an electrocardiogram test. If

plaintiff had in fact suffered no heart attack, how-
ever, his claim of injury due to a heart attack as a
basis for work loss benefits would be unsupporta-
ble. Thus, no admission occurred. Moreover, we
note that Dr. Clark himself effectively rebutted his
own report by conceding during cross-examination
that, at the time he examined plaintiff, he "didn't
have sufficient information to know [plaintiff] had
a heart attack," that subsequent to his examina-
tion of plaintiff, he was shown a portion of plain-
tiff's medical records showing that plaintiff had
suffered a heart attack of a type that "could leave
him with a perfectly normal electrocardiogram
later on," and that he did not dispute the diagno-
sis of physicians at Oakwood Hospital that plain-
tiff had in fact suffered a heart attack on May 27,
1982.

Affirmed.