*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGE KRAWCZYNSKI,

       Plaintiff,

V

DUNIGAN BROS, INC., and BLU A. BRODOCK,

       Defendants-Third Party Plaintiffs-
       Appellants,

and

MICHIGAN PAVING AND MATERIALS
COMPANY,

       Defendant-Third Party Defendant-
       Appellee,

and

ACCESSPOINT HR SERVICES, doing business as
ACCESS EMPLOYMENT STAFFING, INC.,

       Defendants.

UNPUBLISHED
March 4, 2021

No. 344965
Branch Circuit Court
LC No. 16-110613-NI

Before: GADOLA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

       Defendants and third-party plaintiffs, Blu A. Brodock and Dunigan Bros., Inc., appeal by leave granted[1] the trial court's orders denying their motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition to defendant and third-party defendant Michigan

---

[1] *Krawczynski v Dunigan Bros Inc*, unpublished order of the Court of Appeals, entered January 14, 2019 (Docket No. 344965).

Paving and Materials Company (Michigan Paving) under MCR 2.116(I)(2). We reverse and remand.

## I. BACKROUND

This case concerns a traffic incident which occurred on October 17, 2016 when the work van driven by the plaintiff George Krawczynski collided with a front-end loader driven by defendant Brodock in the course of his employment for defendant Dunigan. The collision occurred when Brodock backed across W Chicago from south Freemont onto North Freemont. Vehicles owned by Michigan Paving were parked in the center turn lane of West Chicago and Freemont facing west. In his then most recent amended complaint, Krawczynski alleged that his injuries were caused by the negligence of both Brodock and his employer Dunigan, and Michigan Paving whose trucks were parked. The issue of negligence is actively contested among the parties but is not the principle focus of this appeal. Instead, this appeal concerns the interplay between the contractual indemnification language in the contracts between Dunigan and its subcontractors.

At the time of the incident, Dunigan was the general contractor for a project for the city of Coldwater (city). Under the written contract, Dunigan, as general contractor, was responsible for overall project execution and was obliged to indemnify the city and hold it harmless for any and all claims arising from the contract. Dunigan was empowered to hire subcontractors for the work, was required to indemnify the city against any claims arising from the work of the subcontractors., and obliged to act as general contractor for the city. Dunigan engaged several sub-contractors for the project, including defendant Michigan Paving. Dunigan's subcontract with Michigan Paving included indemnification and hold harmless language.

Krawczynski filed suit against the driver, Brodock, and his employer , Dunigan Bros., in November 2016. Within months Brodock and Dunigan filed notice of non-party fault against Michigan Paving. Krawczynski then amended his complaint to include negligence claims against Michigan Paving. Dunigan filed a third party complaint against Michigan Paving asserting a contractual breach for failing to assume its defense against Krawczynski and for indemnification under the subcontract. Michigan Paving denied that it had any obligation to indemnify or defend Dunigan because Michigan Paving was not performing covered work at the time of incident.

The parties engaged in a vigorous pre-trial process including several amended complaints, counter-complaints, and amended answers. The vehicle drivers, defendants' supervisors, and risk management personnel were deposed. The responding officer who issued a citation to Brodock was also deposed. Krawczynski engaged an expert witness on accident reconstruction and his deposition was taken. Dunigan and Michigan Paving filed several iterations of motions for summary relief. On May 22, 2018, the court granted summary relief to Michigan Paving and denied the counter motion of Dunigan. The trial court made multiple findings of fact. It found that Michigan Paving was only required to indemnify Dunigan and its employees for claims that arose out of or were the result of Michigan Paving's work and that under the Subcontract Michigan Paving was only required to provide traffic regulator control when it was engaged in top course paving. It found that the evidence demonstrated Michigan Paving was not engaged in top course paving at the site of the accident, thereby not triggering the requirement to indemnify Dunigan and Brodock. After denial of both motions to reconsider and renewed motions for relief, the parties were granted leave to appeal to this Court.

## II. STANDARD OF REVIEW

"A trial court's grant or denial of summary disposition under MCR 2.116(C)(10) is reviewed de novo on appeal." *Liberty Mut Ins Co v Michigan Catastrophic Claims Ass'n*, 248 Mich App 35, 40; 638 NW2d 155 (2001). "A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party." *Dept of Transp v Natl Interstate Ins Co,* 331 Mich App 112, 117; 951 NW2d 113 (2019). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 720; 635 NW2d 52 (2001). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

"We also review de novo the interpretation of a contract and the legal effect of one of its clauses." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015).

## III. ANALYSIS

This case requires us to interpret multiple provisions of the parties' Subcontract. "The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). "An indemnity contract is interpreted in accordance with the rules of construction that govern any other type of contract." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 225; 911 NW2d 493 (2017). A "court must look at the contract as a whole and give meaning to all terms." *Auto–Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). Unambiguous contract terms must be enforced as written. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). A dictionary may be consulted to determine a word's common and ordinary meaning. *Krohn v Home–Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). "[T]he threshold question whether a contract's indemnity clause applies to a set of facts" is determined by a "straightforward analysis of the facts and the contract terms." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014) (quotation marks and citation omitted). "Where parties have expressly contracted for indemnification, the extent of the duty must be determined from the language of the contract." *Id*. (quotation marks and citation omitted). "A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply ...." *Title Guaranty & Surety Co v Roehm*, 215 Mich 586, 592; 184 NW 414 (1921) (quotation marks and citation omitted).

Dunigan and Brodock argue that the trial court erred when it denied their motion for summary disposition under MCR 2.116(C)(10) and granted Michigan Paving's motion under MCR 2.116(I)(2), finding that Michigan Paving was not required to indemnify and defend Dunigan and Brodock against Krawczynski's claims. We agree.

Two indemnification provisions are at issue. Both are contained in Article 9 of the Subcontract. The first provides:

> **9.1 Indemnification.** To the fullest extent permitted by law, Subcontractor shall indemnify, defend and hold harmless the Contractor, Owner, . . . and . . . their . . . employees . . .from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property . . . but only to the extent caused or alleged to be caused in whole or in any part by the negligent acts or omissions of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. . . . .

Under section 9.1, Michigan Paving must indemnify Dunigan and Brodock "to the fullest extent permitted by law "from and against claims: 1) arising out of or resulting from the performance of Michigan Paving's work, 2) attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, and 3) caused or alleged to be caused all or in part by Michigan Paving or its employees.

The second provision provides:

> **9.3 Additional Indemnification.** Subcontractor shall indemnify, defend and hold harmless the Indemnified Parties from and against any and all claims, demands, suits, actions, expenses, judgments, losses and liabilities, including fines and penalties, costs and attorneys', consultants', and experts' fees as a result of Subcontractor's actual or alleged failure to perform this Subcontract in accordance with the terms of this Agreement and the Contract Documents. The foregoing obligations of Subcontractor shall include, but are not limited to, indemnifying, defending and holding harmless from claims made by third parties against any Indemnified Party. Subcontractor's liability includes, but is not limited to, . . . (iv) liability to third parties. . .; . . . and (viii) attorneys' fees and related costs. Subcontractor's actual or alleged failure to perform shall include the actual or alleged failure of Subcontractor's lower-tier Subcontractors or suppliers to perform. . . .

Under section 9.3, Michigan Paving was required to indemnify Dunigan and Brodock "from and against all claims . . . as a result of [Michigan Paving's] actual or alleged failure to perform this Subcontract."

In his first complaint, Krawczynski alleged that his injuries were the result of Brodock's negligent operation of the front end loader and Dunigan's failure to provide supervision and safety at the construction site. The affirmative defenses filed by Dunigan and Brodock alleged *inter alia* that: Krawczynski was comparatively negligent and, the superseding and intervening negligence of others caused Krawczynski's injuries. Dunigan and Brodock reserved the right to file claims against non-parties under MCL 600.2957 *et seq*. The notice of non-party fault and second

amended complaint which added Michigan Paving as a defendant, alleged Michigan Paving was negligent *inter alia* "regarding construction services, supervision, safety, traffic safety, traffic control, interference with traffic, warnings, flagging, and traffic regulator control in the area of and at the time of the accident[.]" The second amended complaint also alleged Dunigan was vicariously liable for Michigan Paving's negligence for having entered into the Subcontract with Michigan Paving for the work to be performed at the site of the accident. The third party complaint further alleged that under the Subcontract: 1) the duties and obligations charged by Krawczynski against Dunigan and Brodock were primarily the duties of Michigan Paving; 2) Michigan Paving was required to indemnify Dunigan and Brodock against Krawczynski's claims; and 3) that Michigan Paving breached the Subcontract by failing to obtain the required insurance for Dunigan and Brodock.

Dunigan and Brodock argue that the trial court erred in finding that the indemnification clauses did not cover Krawczynski's claims. They argue that Michigan Paving's safety responsibilities and duties were not confined to only when Michigan Paving was actually engaged in top course paving at the site of the accident. In support of this contention, Dunigan and Brodock point to the italicized language in section 1.1 of the Subcontract below, which states that the Subcontractor's Work includes not only the work described in Exhibit A, but also "all work incidental thereto." Michigan Paving opposes this interpretation, and instead asserts that its responsibilities under the Subcontract were limited to the performance of its work as described in Exhibit A to the Subcontract, also below.

"Subcontractor's Work" is defined in Article 1, section 1.1:

**1.1 Subcontractor's Work.** Subcontractor shall perform all work and shall furnish all supervision, labor, materials, layout, hoisting, tools, equipment, supplies, shop drawings, samples, insurance and all other things necessary for the construction and completion of the work described in Exhibit A attached hereto and incorporated herein, *together with all work incidental thereto* (collectively the "Subcontractor's Work") . . . [Emphasis added].

Exhibit A provides:

| Work Description | Rate: | QTY: | UNIT | PRICE | Total Price |
|---|---|---|---|---|---|
| 1  Mobilization*(MPM work only) | | 5 | EA | $750.00 | $3,750.00 |
| 3  Maintaining Traffic* | | 1 | LSUM | $3,600.00 | $3,600.00 |
| 64  Bituminous Pavement, 4C | | 2330 | Ton | ~~$73.44~~ *73.44* | ~~$171,115.20~~ *171,115.20* |
| 65  Bituminous Pavement, 5C | | 1361 | Ton | $73.30 | $99,761.30 |
| 66  Bituminous Pavement, 4E3 | | 2310 | Ton | $69.86 | $161,376.60 |
| 67  Bituminous Hand Patching | | 330 | Ton | $114.34 | $37,732.20 |
| A13  Bituminous Pavement, 3E3 | | 2700 | Ton | $66.41 | $179,307.00 |
| A14  Bituminous Pavement, 4E3 | | 1800 | Ton | $69.02 | $124,236.00 |
| **Optional Items** | | | | | |
| 6  Cold Milling Bituminous Surface* | | 400 | SYD | $12.82 | |
| A2  Cold Milling Bituminous Surface* | | 15000 | SYD | $1.86 | |

Cold milling includes trucking, and cleanup

Maintaining traffic assumes traffic regulator control during top course paving, any traffic regulator personel for base and leveling courses needed will be the responsibilty of the prime contractor.

Mobilization assumes 5 mobs, any additional mobs needed will be billed at $750 each.

Project Total     $780,878.30

Reading section 1.1 and Exhibit A together, the "Subcontractor's Work" is "all supervision, labor, materials, layout, hoisting, tools, equipment, supplies, shop drawings, samples, insurance and all other things necessary for the construction and completion of" "mobilization", "maintaining traffic", base course paving, top course paving, "hand patching", and "cold milling", "together with all work incidental" to performing the above-mentioned work.[2] While Exhibit A identifies some of the incidental work that is to take place, for example, "Cold milling includes trucking and clean up", and top course paving includes traffic regulator control, the Exhibit is not all-inclusive of Michigan Paving's work under the Subcontract. This is especially true in light of the broad language employed in section 1.1 that "*all* supervision, labor,. . . and *all* other things necessary . . . together with *all* work incidental thereto" constitutes the "Subcontractor's Work."[3] Based on this plain reading of section 1.1 and Exhibit A, we conclude that the trial court erred in finding that Michigan Paving's duties under the Subcontract only arose when it was engaged in top course paving.

There was record evidence which created a material question of fact as to whether Michigan Paving was engaged in contractual work at the time of the collision between Brodock and Krawczynski. There were jobsite logs which noted that on October 15, 2016, Michigan Paving had milled the northbound lanes on south Fremont. The contract between Dunigan and Michigan Paving, obliged Michigan Paving to do cold milling work and cleanup at that site. Michigan

---

[2] According to Yrlas, bituminous pavement 4C is base course pavement. Bituminous pavement 5C is top course pavement. Milling involves the use of heavy equipment to break through pavement.

[3] "[T]here is no broader classification than the word 'all.' " *Skotak v Vic Tanny Intern, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994), holding mod by *Patterson v Kleiman*, 447 Mich 429; 526 NW2d 879 (1994).

-6-

Paving contracted with Caporossi Milling to do Michigan Paving's milling for the Dunigan pavement job. Brodock testified that on the day of the incident, the curbs had been milled and he was assisting in moving the debris so that paving could begin. Yrlas, Michigan Paving's supervisor, testified that the flow boy trucks were there that day to begin paving but that the roads were too wet for them to proceed. While that Michigan Paving representative averred that Michigan Paving "had no direct or indirect responsibility for clearing broken concrete pieces or other debris left at a site by the operations of other contractors", the debris that Brodock was removing was arguably left by Michigan Paving's agent. Brodock also testified that Dunigan and Michigan Paving were the only two companies on site the day of the accident. He testified that the curbs were busted out, the sewers were put in, and "[t]hat's why the asphalt company was there." He testified that Michigan Paving's pavers, flow boy semi truckers, and rollers were all on site. Yrlas testified that a paving crew of "two screed operators, two roller operators, a density tech," laborers, and three flaggers was at the job site at approximately 9:30 a.m., with the accident occurring at approximately 10:00 a.m. The flow boy drivers testified that they were sent to the intersection of Fremont and West Chicago by Michigan Paving with asphalt, and that they were parked in the center lane of West Chicago for approximately one hour waiting for direction from Yrlas. Regardless, the trial court erred because there was competent evidence that the flow boys of Michigan Paving were at the site to pave and that the decision not to do so was made, at least, contemporaneously with the incident. Additionally, a rational trier of fact had evidence upon which to conclude that Brodock was acting in furtherance of the paving mission as he backed across West Chicago to remove debris.

In addition to the grant of summary disposition to Michigan Paving being erroneous, we conclude that Dunigan and Brodock are entitled to indemnification under sections 9.1 and 9.3. In other contexts, this Court has defined "arising out of" as requiring a causal connection between the injury and accident that must be more than "incidental, fortuitous or 'but for.'" *Kochoian v Allstate Ins Co*, 168 Mich App 1, 8; 423 NW2d 913 (1988) (citation omitted). Section 9.1 provides the connection between the Work for which Michigan Paving must indemnify Dunigan and Brodock as that "to the extent caused or alleged to be caused in whole or in any part by the negligent acts or omissions of" Michigan Paving. Krawczynski's claims "regarding construction services, supervision, safety, traffic safety, traffic control, interference with traffic, warnings, flagging, and traffic regulator control in the area of and at the time of the accident" arise from allegations that concern Michigan Paving's negligent performance of the Work under the Subcontract, thereby triggering section 9.1. Similarly, Michigan Paving promised to additionally indemnify Dunigan and Brodock under section 9.3 "against any and all claims, . . . as a result of Subcontractor's actual or alleged failure to perform this Subcontract." Again, Krawczynski's claims are alleged failures of Michigan Paving's performance.[4]

---

[4] We reject Michigan Paving's contention that section 9.3 is inapplicable for want of a contractual relationship between Krawczynski and Michigan Paving. Section 9.3 reads:

> Subcontractor shall indemnify, defend and hold harmless the Indemnified Parties
> from and against any and all claims, . . . as a result of Subcontractor's actual or

Dunigan and Brodock lastly contend that the trial court erred in not deciding their breach of contract claim related to Michigan Paving's promise to obtain liability insurance for them under Article 10 of the Subcontract. Article 10 provides in part, that the "Subcontractor's insurance policies shall state that they are primary and not additional to, or contributing to, or contributing with, any other insurance carried by, or for the benefit of the Additional Insured." Below, Michigan Paving presented an affidavit and policy document as an offer of proof that it had obtained the insurance required under the Subcontract. The trial court however did not reach this issue in deciding the opposing motions. On remand, we direct the trial court to address and decide the merits of the breach of contract claim.

We reverse the trial court's order granting summary disposition to Michigan Paving and denying summary disposition to Brodock and Dunigan. We remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

alleged failure to perform this Subcontract in accordance with the terms of this Agreement and the Contract Documents. The foregoing obligations of Subcontractor *shall include, but are not limited to, indemnifying, defending and holding harmless from claims made by third parties against any Indemnified Party.* Subcontractor's liability includes, but is not limited to, . . . (iv) liability to third parties. . .; . . . and (viii) attorneys' fees and related costs." [Emphasis added].

This provision is not ambiguous.

Michigan Paving's citation to *Romain v Frankenmuth Mut Ins Co*, 483 Mich 18; 762 NW2d 911 (2009), in support of its contention that section 9.3 does not apply is also unavailing. Importantly, *Romain* did not involve a contract for indemnification. Neither did *Romain* involve a third-party complaint between defendants. In *Romain*, the Supreme Court affirmed the trial court's decision to grant the plaintiff's motion to strike the defendant's notice of nonparty at fault. Here, Krawczynski did not move to strike the same notice from Brodock and Dunigan, but instead moved to amend the complaint to add Michigan Paving.